## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO,<br><br>          Plaintiff,<br><br>   v.<br><br>JEFF ZUCKER, CHRIS CUOMO,  CABLE NEWS NETWORK, INC., KEVIN ROBILLARD, HUFFINGTON POST, TESSA STUART, and ROLLING STONE,<br><br>       Defendants. | Civil Action No.<br>1:18-cv-02894-RCL |

## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Jeff Zucker, Chris Cuomo, and Cable News Network, Inc. (collectively, the "CNN Defendants"), respectfully move this Court to dismiss the complaint with prejudice for failure to state a claim.

Oral argument is requested.

Dated:  March 15, 2019

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  /s/ Stephen J. Fuzesi
Kevin T. Baine
Stephen J. Fuzesi
Nicholas G. Gamse
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
sfuzesi@wc.com

*Attorneys for Defendants Jeff Zucker, Chris Cuomo, and Cable News Network, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO, | |
| Plaintiff, | |
| v. | Civil Action No. |
| JEFF ZUCKER, CHRIS CUOMO,  CABLE NEWS NETWORK, INC., KEVIN ROBILLARD, HUFFINGTON POST, TESSA STUART, and ROLLING STONE, | 1:18-cv-02894-RCL |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE CNN DEFENDANTS' MOTION TO DISMISS**

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Stephen J. Fuzesi
Nicholas G. Gamse
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
sfuzesi@wc.com

*Attorneys for Defendants Jeff Zucker, Chris*
*Cuomo, and Cable News Network, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    Arpaio's History as a Controversial and Outspoken Public Figure. .......................4

    B.    Arpaio's Conviction for Criminal Contempt. ........................................................6

    C.    Arpaio's Candidacy for United States Senate and the CNN Coverage at Issue. ...................................................................................................................8

    D.    This Lawsuit..........................................................................................................10

LEGAL STANDARD.............................................................................................................10

ARGUMENT ........................................................................................................................11

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION. ...................11

    A.    The CNN Report Was Substantially True. ............................................................11

    B.    The Complaint Fails To Plausibly Allege Actual Malice. .....................................15

          1.    The Actual Malice Standard Applies........................................................17

          2.    The Threadbare Allegations of Actual Malice Do Not State a Claim........................................................................................................18

II.     THE COMPLAINT FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE AND FALSE LIGHT INVASION OF PRIVACY. ...........................20

    A.    The Claim for Tortious Interference Fails for Independent Reasons. ...................20

    B.    The Claim for False Light also Fails for Independent Reasons............................22

III.    FOR ADDITIONAL REASONS, THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JEFF ZUCKER................................................................................23

CONCLUSION......................................................................................................................24

CERTIFICATE OF SERVICE ...............................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237 (2014) ................................................................15

*Alexander v. FBI*, 186 F.R.D. 188 (D.D.C. 1999) ..........................................................3

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................10, 19, 21

*Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78 F.3d 550 (Fed. Cir. 1996) ........................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................10

*Benz v. Wash. Newspaper Publ'g Co.*, 2006 WL 2844896 (D.D.C. Sept. 29, 2006) ...................23

*Bloom v. Illinois*, 391 U.S. 194 (1968) ........................................................12

*Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249 (D.D.C. 2013) ...................................12

*Brewer v. Am. Nat'l Ins.*, 636 F.2d 150 (6th Cir. 1980) ..........................................23

*Bundy v. U.S. Dist. Ct. (In re Bundy)*, 840 F.3d 1034 (9th Cir. 2016) ...........................3

*Cerasini v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) ........................................23

*\*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017) ................................. *passim*

*Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219
    (D.D.C. 2016) ........................................................21

*Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018) .......................................16, 20

*\*Farah v. Esquire Mag.*, 736 F.3d 528 (D.C. Cir. 2013) .....................................3, 4, 8, 20

*Flake v. Arpaio*, 2016 WL 4095831 (D. Ariz. Aug. 2, 2016) ........................................5

*Folwell v. Miller*, 145 F. 495 (2d Cir. 1906) ........................................................23

*Freedom Watch, Inc. v. U.S. Dep't of State*, 324 F.R.D. 20 (D.D.C. 2018) ..........................3

*Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010) (per curiam) ......................................5

*Hahn v. City of Kenner*, 984 F. Supp. 436 (E.D. La. 1997) .........................................13

*Authorities upon which counsel chiefly rely are marked with asterisks.*

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ..........................................17

*Hoffman v. Wash. Post Co.*, 433 F. Supp. 600 (D.D.C. 1977), aff'd, 578 F.2d 442
   (D.C. Cir. 1978) ..........................................................................................................19

*Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016)..........................16, 19

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988) ..........................................................20

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016) ..........................................16

*\*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106 (D.C. Cir. 2017) ........................3, 15, 16, 18

*Klayman v. Barmak*, 2009 WL 4722803 (D.D.C. Dec. 4, 2009) ......................................3

*Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137 (D.D.C. 2011)..........................3

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) ......................12

*Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018)..................12, 15

*Logan v. District of Columbia*, 447 F. Supp. 1328 (D.D.C. 1978)..................................19

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33 (2d Cir. 1998)......................4

*Maib v. FDIC*, 771 F. Supp. 2d 14 (D.D.C. 2011) ..........................................................21

*Marshall v. Allison*, 908 F. Supp. 2d 186 (D.D.C. 2012) ..............................................21

*\*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ..........................................2, 12

*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996)..........................16, 18

*McNamara v. Picken*, 866 F. Supp. 2d 10 (D.D.C. 2012) ..............................................22

*Melendres v. Arpaio*, 2016 WL 2783715 (D. Ariz. May 13, 2016)..................................6

*Melendres v. Arpaio*, 2016 WL 3996453 (D. Ariz. July 26, 2016) ................................6

*Melendres v. Arpaio*, 2016 WL 4414755 (D. Ariz. Aug. 19, 2016) ..............................15

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)......................................................6

*Melendres v. Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013)............................................5

*Melendres v. Maricopa Cty.*, 897 F.3d 1217 (9th Cir. 2018) ..........................................6

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ......................................16

*Moldea v. N.Y. Times Co.*, 22 F.3d 310 (D.C. Cir. 1994)..............................................12

*Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971) .......................................................................17

*Murray v. Bailey*, 613 F. Supp. 1276 (N.D. Cal. 1985) ...............................................................15

*Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425 (D. Md. 2005) .......................................15

*\*New York Times v. Sullivan*, 376 U.S. 254 (1964).......................................................2, 16, 17, 19

*Ocala Star-Banner Co. v. Damron*, 401 U.S. 295 (1971) ...........................................................17

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) ........................................................................11

*Parisi v. Sinclair*, 774 F. Supp. 2d 310 (D.D.C. 2011).................................................................19

*Robertson v. Cartinhour*, 867 F. Supp. 2d 37 (D.D.C. 2012)......................................................12

*Robles v. In the Name of Humanity, We Refuse to Accept a Fascist Am.*, 2018 WL
     2329728 (N.D. Cal. May 23, 2018) ........................................................................................3

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ............................................16, 20

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) (per curiam) ...................................................22

*St. Amant v. Thompson*, 390 U.S. 727 (1968)...............................................................16, 18, 19

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) ...............12, 15

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) (en banc) ..................................................11

*Tavoulareas v. Piro*, 93 F.R.D. 11 (D.D.C. 1981) ......................................................................23

*Time, Inc. v. Pape*, 401 U.S. 279 (1971)....................................................................................19

*Tiwari v. NBC Universal, Inc.*, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) ...........................13

*\*United States v. Arpaio*, 2017 WL 3268180 (D. Ariz. July 31, 2017)................................ *passim*

*United States v. Arpaio*, 2017 WL 4839072 (D. Ariz. Oct. 19, 2017)...........................................8

*United States v. Arpaio*, No. 2:16-cr-01012-SRB (D. Ariz.).....................................................7, 15

*United States v. Battle*, 2017 WL 2983891 (W.D. Pa. July 12, 2017).........................................14

*United States v. Broussard*, 611 F.3d 1069 (9th Cir. 2010)........................................................14

*United States v. Carpenter*, 91 F.3d 1282 (9th Cir. 1996) (per curiam) .....................................14

*United States v. Cohn*, 586 F.3d 844 (11th Cir. 2009) (per curiam)............................................14

*United States v. Wright*, 812 F.3d 27 (1st Cir. 2016)..................................................................14

*Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980) ........................................17

*Washburn v. Lavoie*, 357 F. Supp. 2d 210 (D.D.C. 2004)............................................................22

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ............................................15

*Williams v. Fed. Nat'l Mortg. Ass'n*, 2006 WL 1774252 (D.D.C. June 26, 2006)......................21

## STATE CASES

*Barnett v. Denver Pub. Co.,* 36 P.3d 145 (Colo. Ct. App. 2001)..................................................13

*Brewer v. Dungan*, 1993 WL 441306 (N.C. Super. Ct. June 30, 1993) ........................................13

*Thompson v. Armstrong*, 134 A.3d 305 (D.C. 2016)....................................................................18

## STATUTES

18 U.S.C. § 401(3) .....................................................................................................................6, 7

18 U.S.C. § 3559..........................................................................................................................14

## OTHER AUTHORITIES

David A. Elder, *Defamation: A Lawyer's Guide* § 5:3 (West 2018).............................................17

Executive Grant of Clemency to Joseph M. Arpaio (Aug. 25, 2018),
    https://www.justice.gov/pardon/file/993586/download............................................................8

Mary Romero, *Are Your Papers in Order?: Racial Profiling, Vigilantes, and
    "America's Toughest Sheriff"*, 14 Harv. Latino L. Rev. 337 (2011) ........................................5

## **INTRODUCTION**

This is a libel suit brought by a controversial political figure seemingly more intent on standing "up to the left's 'Fake News' media," as his counsel said in announcing the suit, than in pursuing any legitimate cause of action.  The Complaint should be dismissed with prejudice.

For nearly 25 years, Joseph Arpaio was the sheriff of Maricopa County, Arizona.  Over those years, he became one of the most polarizing political figures in the country, promoting himself as "America's Toughest Sheriff" and embroiling himself in controversy, particularly over his positions on racial profiling and immigration.  At the end of his tenure, in 2017, Arpaio was convicted in federal court of criminal contempt.  Judge Susan Bolton of the United States District Court for the District of Arizona found that Arpaio knowingly and willfully violated an order enjoining him from detaining individuals without reasonable suspicion that a crime had been committed.  President Trump then pardoned Arpaio before he was sentenced.

This imbroglio did not stop Arpaio from pursuing further political ambition.  A year later, Arpaio announced his candidacy for United States Senator from Arizona.  Like many news outlets, CNN covered Arpaio's campaign.  On January 10, 2018, CNN's "New Day" morning program ran a report analyzing his candidacy.  Anchor Chris Cuomo introduced the report, noting that "[c]ontroversial former Maricopa County Sheriff Joe Arpaio, convicted <u>felon</u>, then pardoned" was "jumping back into politics after being pardoned by the president."  (Emphasis added).  The report, delivered by CNN correspondent Kyung Lah, discussed his candidacy at length and included an interview with Arpaio.  The report explained that Arpaio had been "convicted of criminal contempt for defying a court order," noting that the conviction was a "<u>misdemeanor</u> that President Trump would pardon a month later."  (Emphasis added).  Within minutes, at the close of the segment, Cuomo made a live, on-air correction of his introduction, clarifying that Arpaio was "convicted of a <u>misdemeanor</u>.  <u>He's not a convicted felon</u>, like I said."

1

(Emphasis added).   Later that day, Arpaio joined Cuomo as a scheduled guest for about ten minutes on his nightly CNN show to further discuss his candidacy.   Months later, Arpaio went on to lose the Republican primary by more than 30 percentage points.

Now claiming to eye another run for the U.S. Senate, Arpaio brings this lawsuit against CNN, Cuomo, and CNN president Jeff Zucker ("CNN Defendants"), as well as other news organizations and journalists, seeking "in excess of $300,500,000 USD."   Arpaio's legal claims have no plausible basis and are as far-fetched as the damages he alleges.   As to the CNN Defendants, the claims are based entirely on Cuomo's single passing reference to "felon[y]," as opposed to "misdemeanor," in describing Arpaio's conviction and pardon.   But this reference was not only clarified in the segment, in which the correspondent described the conviction as a "misdemeanor"; it was also promptly corrected by Cuomo at the close of the segment.   The Complaint ignores both of these facts, but that sleight of hand cannot create a claim.

Arpaio's claims are specious and should be dismissed for multiple reasons:

*First*, the CNN broadcast was substantially true.   It is undisputed that Arpaio was convicted of the federal crime of criminal contempt.   The single reference to "felon," which was clarified in the piece, and corrected immediately after, did not render the broadcast false.   "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified."   *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991) (quotation marks omitted).

*Second*, as a public figure, Arpaio's claims are subject to the demanding actual malice standard of *New York Times v. Sullivan*, 376 U.S. 254 (1964).   Arpaio wholly fails to plead facts plausibly showing that any of the CNN Defendants acted with actual malice.   Rather, Arpaio does no more than plead the conclusory legal elements.   This does not state a claim.

*Third*, in addition to these constitutional deficiencies, Arpaio's claims for tortious interference and false light invasion of privacy fail for the independent reason that they fail to allege the necessary common-law elements of those claims.

*Finally*, Arpaio's claims against Zucker as an individual also fail for the additional reason that there are simply no plausible allegations tying him to the publication at issue in this case.

\* \* \*

"To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017); *see also Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013). This is just such an unmeritorious lawsuit—championed by counsel who has been sanctioned in this Court multiple times and garnered a national reputation for abusive filings,[1] and replete with claims that seem more intent on harassing perceived critics in

---

[1] *See, e.g.*, *Freedom Watch, Inc. v. U.S. Dep't of State*, 324 F.R.D. 20, 23 (D.D.C. 2018) (imposing sanctions, holding that Mr. Klayman's "disregard of the court's orders in this case is remarkable . . . [i]t takes real chutzpah to ignore the court's orders and, at the same time, to act the aggrieved party"); *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 149, 150 (D.D.C. 2011) (imposing sanctions, explaining that "[t]his is a level and pattern of intransigence and disrespect for the Court's authority that is not often witnessed. Klayman's failures to comply with this Court's orders have been repeated, flagrant, and unrepentant."); *Klayman v. Barmak*, 2009 WL 4722803, at \*1 (D.D.C. Dec. 4, 2009) (imposing sanctions where "Plaintiff has also failed to comply with even the most basic of discovery requirements"); *Alexander v. FBI*, 186 F.R.D. 188, 190 (D.D.C. 1999) (stating that "[t]he court has grown weary of plaintiffs' counsel's use—and abuse—of the discovery process"); *see also, e.g.*, *Robles v. In the Name of Humanity, We Refuse to Accept a Fascist Am.*, 2018 WL 2329728, at \*1 (N.D. Cal. May 23, 2018) ("Over the years, numerous courts have sanctioned Klayman, called his behavior into question, or revoked his *pro hac vice* admission. Two courts have banned Klayman from their courts for life."); *Bundy v. U.S. Dist. Ct. (In re Bundy)*, 840 F.3d 1034, 1036 (9th Cir. 2016) ("Under our decisions, the district court had more than ample cause to turn down Klayman's application: he is involved in an ethics proceeding before the District of Columbia Bar, and he was not candid with the court about the status of those proceedings; he disclosed that he was twice barred in perpetuity from appearing *pro hac vice* before judges in the Central District of California and the

the media than substantiating a legal case.  If Arpaio wishes to air his grievances with the media, he has a First Amendment right to speak his mind.  But that does not give rise to a legal cause of action.  The Complaint should be dismissed with prejudice.[2]

## BACKGROUND

A.  **Arpaio's History as a Controversial and Outspoken Public Figure.**

Arpaio served as the elected Sheriff of Maricopa County from 1993 until 2017.  Compl. ¶ 14.  He has actively pursued the national spotlight, branding himself as "American's Toughest Sheriff," including in this lawsuit, Compl. ¶ 49, and authoring two books prominently featuring that moniker, *America's Toughest Sheriff: How We Can Win the War Against Crime* (1997) and *Joe's Law: America's Toughest Sheriff Takes on Illegal Immigration, Drugs and Everything Else That Threatens America* (2008).[3]

---

Southern District of New York, but he failed to list numerous cases—all available on Westlaw or LEXIS—in which he has been reprimanded, denied *pro hac vice* status, or otherwise sanctioned for violating various local rules; and he has a record of going after judges personally, and shortly after Chief Judge Gloria Navarro denied his application, Bundy filed a frivolous *Bivens* action against her in her own court."); *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 37–39 (2d Cir. 1998) (affirming order barring Mr. Klayman from further *pro hac vice* practice before a district judge where Plaintiff sent the judge an "insulting" letter "strongly implying that he was not impartial based solely on his appointment by the Clinton Administration and on his being Asian-American"); *Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78 F.3d 550, 562 (Fed. Cir. 1996) (affirming sanctions where the district court "considered Mr. Klayman to have acted in bad faith, in particular by making certain misrepresentations to the court").

[2] The CNN Defendants are concurrently filing a special motion under the District of Columbia Anti-SLAPP Act.  *See* D.C. Code Ann. §§ 16-5501 *et seq.*

[3] The Court can take judicial notice of these publications and the other facts cited in this background section.  "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice," including "publicly available historical articles." *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013) (alteration and quotation marks omitted).

Arpaio has "aggressively sought media attention," making him, in the view of one journal, "the most interviewed public figure in the Phoenix area and the most recognizable because of his frequent media coverage." Mary Romero, *Are Your Papers in Order?: Racial Profiling, Vigilantes, and "America's Toughest Sheriff"*, 14 Harv. Latino L. Rev. 337, 345 (2011). His prolific public profile has been recognized by numerous federal courts. *See, e.g.*, *United States v. Arpaio*, 2017 WL 3268180, at *2-3 (D. Ariz. July 31, 2017) (contempt order based on findings regarding Arpaio's comments in numerous media interviews, including with CBS, Fox News, PBS News Hour, and Univision, among others); *Melendres v. Arpaio*, 989 F. Supp. 2d 822, 844 (D. Ariz. 2013) ("Sheriff Arpaio gave interviews to the national and local press in which he asserted that if a person is in the country without authorization that person has necessarily committed a criminal offense."), *aff'd in part*, *vacated in part*, 784 F.3d 1254 (9th Cir. 2015); *see also, e.g.*, *Flake v. Arpaio*, 2016 WL 4095831, at *5 (D. Ariz. Aug. 2, 2016) (Sheriff Arpaio "repeatedly thrust[] into the media himself, his investigation, and his recommendation of charges against the Flakes.").[4]

During his tenure as Sheriff, Arpaio and the Maricopa County Sheriff's Office ("MSCO") were the subject of civil rights lawsuits related to Arpaio's hard-line tactics. In one case, for example, a federal court found that "conditions in Maricopa County jails . . . violate the Eighth and Fourteenth Amendments" by subjecting prisoners to dangerously high temperatures and inadequate food. *See Graves v. Arpaio*, 623 F.3d 1043, 1045 (9th Cir. 2010) (per curiam).

Another high-profile federal case concerned racial profiling of Latinos, and ultimately led to Arpaio's criminal contempt conviction. In that case, a federal court found that Sheriff Arpaio

---

[4] This summary of prior federal decisions is but a glimpse into a litany of controversies surrounding Arpaio. Other litigants in this Court have recently cataloged controversies in greater detail. *See, e.g.*, Br. of N.Y. Times, *Arpaio v. Cottle*, No. 18-cv-2378 (Dkt. No. 8), at 8-26.

and the MCSO "employed an unconstitutional policy of considering race as a factor in determining where to conduct patrol operations, in deciding whom to stop and investigate for civil immigration violations, and in prolonging the detentions of Latinos while their immigration status was confirmed." *Melendres v. Arpaio*, 784 F.3d 1254, 1258 (9th Cir. 2015). The court issued a permanent injunction to address these constitutional violations, before subsequently determining that the "MCSO had deliberately violated the injunction and committed new constitutional violations." *Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1219 (9th Cir. 2018). The court then issued a supplemental injunction, underscoring that "[t]he facts of this case are particularly egregious and extraordinary. The MCSO's constitutional violations are broad in scope, involve its highest ranking command staff, and flow into its management of internal affairs investigations." *Melendres v. Arpaio*, 2016 WL 3996453, at *1 (D. Ariz. July 26, 2016), *aff'd sub nom. Melendres*, 897 F.3d 1217; *see also id.* ("Sheriff Arpaio and his command staff knowingly failed to implement the Court's preliminary injunction, resulting in harm to many Plaintiff class members who were detained in violation of their constitutional rights.").

The judge presiding over *Melendres*, Judge Snow of the U.S. District Court for Arizona, held Arpaio in civil contempt, citing his "multiple acts of misconduct, dishonesty, and bad faith with respect to the Plaintiff class and the protection of its rights" as well as his "persistent disregard for the orders of this Court." 2016 WL 2783715, at *2 (D. Ariz. May 13, 2016). Three months later, Judge Snow then referred Arpaio for an investigation of criminal contempt. *United States v. Arpaio*, 2017 WL 3268180, at *1 (D. Ariz. July 31, 2017).

## B.   Arpaio's Conviction for Criminal Contempt.

The U.S. Department of Justice brought charges of criminal contempt against Arpaio under 18 U.S.C. § 401(3). The statute does not provide any maximum sentence. To proceed by

bench trial, the Justice Department voluntarily elected to limit the sentence it would seek to a term of six months' imprisonment.[5]

Judge Susan R. Bolton of the U.S. District Court for the District of Arizona held a five-day bench trial.  On July 31, 2017, Judge Bolton issued extensive findings of fact and conclusions of law, finding Arpaio guilty of criminal contempt in violation of 18 U.S.C. § 401(3).  *Arpaio*, 2017 WL 3268180, at *1.  Judge Bolton determined that "Judge Snow issued a clear and definite order enjoining [Arpaio] from detaining persons for further investigation without reasonable suspicion that a crime has been or is being committed; that [Arpaio] knew of the order; and that [Arpaio] willfully violated the order by failing to do anything to ensure his subordinates' compliance and by directing them to continue to detain persons for whom no criminal charges could be filed."  *Id.* at *7.

Judge Bolton found that Arpaio had shown "flagrant disregard for Judge Snow's order" by "broadcast[ing] to the world and to his subordinates that he would and they should continue 'what he had always been doing.'"  *Id.*  He did so through numerous media interviews, which were heavily quoted in the contempt opinion.  *See, e.g., id.* at *2-3 ("In a March 1, 2012 Univision interview, Defendant answered 'yes' when asked if he was still detaining and arresting illegal immigrants. . . .  In an April 4, 2012 Fox News interview Defendant stated, '[he] will never give in to control by the federal government.' . . .  In an August 31, 2012 Fox Latino interview Defendant stated, 'I'm just enforcing the law, I took an oath of office and I won't back down and I will continue to do what I've been doing.'").

Two months later, on August 25, 2017, President Donald Trump pardoned Arpaio for his contempt conviction, as well as for any other offenses "that might arise, or be charged, in

---

[5] Mar. 1, 2017 Order, *United States v. Arpaio*, No. 2:16-cr-01012-SRB (D. Ariz.) (Dkt. No. 83), at 2-3.

connection with *Melendres v. Arpaio*."[6]   It was President Trump's first pardon, and it mooted Arpaio's sentencing.  *United States v. Arpaio*, 2017 WL 4839072, at *2 (D. Ariz. Oct. 19, 2017).

### C.    Arpaio's Candidacy for United States Senate and the CNN Coverage at Issue.

In January 2018, Sheriff Arpaio announced his candidacy for United States Senator from Arizona.   Compl. ¶ 15.   Given his national profile and controversial status, and his recent presidential pardon, his announcement attracted substantial media attention.

On January 10, 2018, CNN covered Arpaio's candidacy on its morning program "New Day" with Chris Cuomo.  Compl. ¶¶ 18-19.  While the Complaint quotes only two words, the segment actually spanned approximately four minutes.[7]   Cuomo began the segment with an introduction: "Fireworks warning. Controversial former Maricopa County Sheriff Joe Arpaio, convicted felon, then pardoned, now jumping back into politics after being pardoned by the president.  Arpaio is running for the Senate seat being vacated by Jeff Flake."  Ex. A at 0:00.

The segment then continued with a detailed report from CNN correspondent Kyung Lah. After introducing Arpaio's candidacy, including part of an interview she conducted with him, the report summarized his controversial history.  Lah explained that "[a]s Maricopa County sheriff, Arpaio sent prisoners to an outdoor jail known as 'Tent City,' requiring they wear striped jumpsuits and pink underwear."  *Id.* at 1:06.   She also covered his contempt conviction, explaining that he "was convicted of criminal contempt for defying a court order for his deputies

---

[6]   Executive Grant of Clemency to Joseph M. Arpaio (Aug. 25, 2018), https://www.justice.gov/pardon/file/993586/download.

[7] The Court may consider documents attached to a motion to dismiss if they are incorporated by reference or integral to the complaint.  *Farah*, 736 F.3d at 534.  The January 10 segment is referenced throughout the Complaint, including with a URL link.  Compl. ¶¶ 18-22.  Exhibit A is a DVD of the segment.  Exhibit B is a transcript of the segment.

to stop racially profiling Latinos" and noting that this conviction was "a misdemeanor that President Trump would pardon a month later."  *Id.* at 1:22.

Featuring more footage from her interview with Arpaio, as well as interviews with Senator Jeff Flake and a GOP political consultant, the rest of the report focused on Arpaio's political prospects.  Lah noted that "voters tired of Sheriff Joe after six terms, handing him a double digit loss in his 2016 re-election campaign" for Sheriff.  *Id.* at 1:43.  Senator Flake and Republican consultant Matthew Benson were both pessimistic about Arpaio's chances to win the Senate race.  *Id.* at 2:32, 2:58.  Benson said "Republicans have to be careful and they can't – they can't afford someone like Joe Arpaio, who is going to fumble away this seat."  *Id.* at 2:58.  Lah gave Arpaio the last word.  Responding to critics, he stated:  "Were they – were they worried about President Trump entering the race? They didn't give him any chance. I guess he won, right?"  *Id.* at 3:12.

With that, the segment returned to the studio for brief discussion between Cuomo and Alisyn Camerota, another CNN anchor.  Cuomo then corrected his introduction:  "But facts first, he is convicted of a misdemeanor; he's not a convicted felon, like I said."  *Id.* at 3:53.  This clarification was made approximately four minutes after the original statement.  Cuomo also plugged Arpaio's appearance later that evening on Cuomo's nighttime show:  "The former sheriff wants to defend his decision [to enter the Senate race].  He needs to be tested. That will happen tonight, 9 o'clock Eastern."  *Id.* at 4:06.

Months—and thousands of news stories[8]—later, Arpaio was defeated in the Republican primary on August 28, 2018.  Compl. ¶ 15.  Placing third in a field of three candidates, he lost to

---

[8] A Lexis search for mentions of Arpaio across news articles between January 11, 2018 and August 27, 2018 tallied 2,751 hits.

9

Martha McSally by more than 30 percentage points.[9]  Undeterred, Arpaio alleges that he intends to run for the other Arizona Senate seat in 2020.  Compl. ¶ 16.

### D.       This Lawsuit.

On December 10, 2018, Arpaio filed the instant lawsuit, asserting claims of defamation (Count 1), tortious interference with prospective business relations (Count 2), and false light (Count 3) against the CNN Defendants.  Arpaio brings similar claims against Rolling Stone and one of its reporters and the Huffington Post and one of its reporters.

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] devoid of further factual enhancement."  *Id.* (quotation marks omitted).  In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quotation marks omitted).  Rather, there must be "well-pleaded factual allegations."  *Id.* at 679.  And the well-pleaded facts must make out a plausible claim.  "[U]nless a plaintiff is able to nudge his or her claim 'across the line from conceivable to plausible,' the complaint must be dismissed."  *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017), *appeal dismissed*, 2017 WL 6553388 (D.C. Cir. Dec. 8, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570-71 (2007)).

---

[9]  Arizona Primary Election Results, Wash. Post, https://www.washingtonpost.com/election-results/arizona/2018-primary-results/?utm_term=.380276eb609a.

**ARGUMENT**

## I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

"In order to state a claim of defamation, [a] plaintiff must allege and prove four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140–41 (D.D.C. 2017) (quotation marks omitted).

Here, Arpaio's Complaint fails to state a claim for two independent reasons, both of which warrant dismissal.  First, CNN's coverage was, at the very least, substantially true. Second, the Complaint fails to plausibly allege that the CNN Defendants published the statement at issue with the requisite fault required under the First Amendment: actual malice.

### A.     The CNN Report Was Substantially True.

Arpaio complains of the reference to "felon" in Cuomo's introduction, but that stray reference did not render the segment as a whole false.  The report clarified explicitly that the offense was a "misdemeanor," and then Cuomo expressly corrected his statement to eliminate any possible lingering confusion, reiterating that Arpaio's conviction was for a "misdemeanor" instead of a felony.  "[T]he cardinal principle of defamation law [is] that words must be read in the context of the entire communication as a whole." *Tavoulareas v. Piro*, 817 F.2d 762, 818 (D.C. Cir. 1987) (en banc) (emphasis original) (quotation marks omitted); *see also Ollman v. Evans*, 750 F.2d 970, 1026 n. 88 (D.C. Cir. 1984); *Deripaska*, 282 F. Supp. 3d at 149.  To be sure, the Complaint fails to acknowledge the clarifying statements.  But Arpaio's "cherry-pick[ing]," which gives the segment "an effect it does not have when read in full," is irrelevant.

11

*Deripaska*, 282 F. Supp. 3d at 149.  When viewed in context, as the report must be, there is no plausible argument that the coverage was false.

Indeed, it is well established that "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (quotation marks omitted).  So long as the "sting of the charge" is "substantially true," no cause of action arises.  *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988); *see also, e.g.*, *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 312 (D.C. Cir. 1994) (a "substantially true" statement is "not actionable in defamation").  And "[w]here the question of truth or falsity is a close one, a court should err on the side of nonactionability."  *Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 158 (D.D.C. 2018) (quotation marks omitted) (granting motion to dismiss).[10]

The only allegedly false statement here is the single reference to "convicted felon."  Compl. ¶¶ 20-21.  It is, of course, indisputable that Arpaio was convicted of the federal crime of contempt—found guilty, beyond a reasonable doubt, of knowingly and willfully violating a court order, and doing so with "flagrant disregard."  *Arpaio*, 2017 WL 3268180, at *7.  "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong . . . ."  *Bloom v. Illinois*, 391 U.S. 194, 201 (1968).  Even if the report never clarified that the offense

---

[10] *See also, e.g.*, *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 59 (D.D.C. 2012) (granting motion to dismiss where "the statements are not capable of conveying a defamatory meaning because they are substantially true"), *aff'd per curiam*, 553 F. App'x 1 (D.C. Cir. 2014); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 263 (D.D.C. 2013) (granting anti-SLAPP special motion to dismiss where plaintiff "failed to make a prima facie showing of facts that [the defendant's] statements were false, let alone 'fabrications' that support an inference of actual malice"); *Deripaska*, 282 F. Supp. 3d at 149 (granting motion to dismiss); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false.  In particular, several courts of appeals have affirmed dismissals of defamation claims because the material in the complaint cannot be reasonably understood except as being true or substantially true.") (citing cases).

was a "misdemeanor" (which it did), as opposed to a "felon[y]," that still would not establish substantial falsity.

Courts across the country have held that similar errors do not give rise to substantial falsity that could support a defamation claim, especially where the underlying gist of the crime has been adequately explained.  For example, in *Tiwari v. NBC Universal, Inc.*, the court held that a broadcast was "substantially true" where the plaintiff had been "convicted of only a misdemeanor," rather than a felony, because the broadcast had presented the underlying conduct in such a way that "the natural and probable effect on the viewer of the broadcast would be no different if the epilogue had reported [the plaintiff's] correct conviction correctly."  2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011).  Similarly, in *Brewer v. Dungan*, the court held that a newspaper's "mistaken characterization of the classification of the crime which plaintiff committed" could not give rise to libel, because reporting that he had been convicted of a felony was "substantially true," even where the crime "was, technically, a misdemeanor."  1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993); *see also, e.g.*, *Hahn v. City of Kenner*, 984 F. Supp. 436, 441 (E.D. La. 1997) ("Hahn's arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true."); *Barnett v. Denver Pub. Co.,* 36 P.3d 145, 148 (Colo. Ct. App. 2001) ("[A]lthough Barnett was convicted of harassment, not stalking, we conclude that the Rocky Mountain News' use of the term 'stalking' to describe his conviction was substantially true, and his defamation claim was properly dismissed.").

So too here.  A viewer of the CNN segment would have necessarily understood that Arpaio was "convicted of criminal contempt" and later pardoned, as the broadcast made clear. There was no mystery about the nature of Arpaio's "underlying conduct."  *Tiwari*, 2011 WL

5079505, at *15.[11]

Underscoring all of this, whether a conviction for contempt is technically even a felony or misdemeanor is an unsettled question of federal criminal law.   The Ninth Circuit has explained the root of the disagreement as follows:   "Most federal crimes are classified as felonies, misdemeanors or petty offenses on the basis of the maximum sentence that can be imposed.   Criminal contempt, which has no statutory maximum sentence, does not fit neatly into this scheme."   *United States v. Carpenter*, 91 F.3d 1282, 1284 (9th Cir. 1996) (per curiam). "Because criminal contempt has no statutory maximum sentence, under a literal reading of the classification statute, it would be a Class A felony."   *United States v. Broussard*, 611 F.3d 1069, 1071–72 (9th Cir. 2010) (emphasis added).   However, the Ninth Circuit has rejected this textual approach in favor of a case-by-case analysis that turns on the "upper limit of the district judge's discretion" for the most analogous underlying offense.   *Id.* at 1072 (quotation marks omitted).   In contrast, the Eleventh Circuit has held that "criminal contempt is an offense *sui generis* that cannot be classified pursuant to § 3559."   *United States v. Cohn*, 586 F.3d 844, 849 (11th Cir. 2009) (per curiam).   And the First Circuit, looking to the plain language of the statute, has most recently held that "criminal contempt should [always] be classified as a Class A felony for the purposes of 18 U.S.C. § 3559(a)."   *United States v. Wright*, 812 F.3d 27, 32 (1st Cir. 2016) (emphasis added); *see also United States v. Battle*, 2017 WL 2983891, at *8 (W.D. Pa. July 12,

---

[11] The Complaint notes that the segment also was posted to the CNN website.  While that posting did not initially include Cuomo's correction, the underlying report of course still clarified that the offense was a "misdemeanor" and correctly identified that Arpaio was convicted of criminal contempt.  Upon learning, after the filing of the Complaint, that the online video did not contain Cuomo's correction, CNN immediately added the correction to the video—and further highlighted the addition on the website ("This piece from January 10, 2018, has been updated to include Chris Cuomo's correction later on that same show that Arpaio was convicted of a misdemeanor, not a felony.").  *See* https://www.cnn.com/videos/tv/2018/12/12/joe-arpaio-senate-run-intv-update-january-2018.cnn.

14

2017) (Hon. Reggie B. Walton) (adopting the First Circuit approach and holding that "the defendants' criminal contempt charges are Class A felony offenses").[12]

This ongoing Circuit split undermines any serious argument that the characterization of the conviction was substantially false. As "a long line of cases holds," "technical errors in legal nomenclature in reports [of] matters involving violation of the law" cannot give rise to substantial falsity. *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) (quotation marks omitted) (citing cases); *Murray v. Bailey*, 613 F. Supp. 1276, 1284 (N.D. Cal. 1985); *see also Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 255 (2014) ("[I]t is irrelevant whether trained lawyers or judges might with the luxury of time have chosen more precise words."). Here not even the nation's leading jurists agree on the correct terminology to apply to criminal contempt.

For all of these reasons, the passing reference to "felon[y]" did not render CNN's report substantially false. On this basis, the Complaint fails to state a claim as a matter of law. *Libre by Nexus*, 311 F. Supp. 3d at 154; *White v. Fraternal Order of Police*, 909 F.2d 512, 526 (D.C. Cir. 1990); *Deripaska*, 282 F. Supp. 3d at 149; *Tannerite Sports*, 864 F.3d at 247-48.

### B.      The Complaint Fails To Plausibly Allege Actual Malice.

"To encourage and facilitate debate over matters of public concern, the Supreme Court has held that the First Amendment protects, among other things, discussion about public officials and public figures." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 113 (D.C. Cir. 2017). A public official or figure must plead and prove that the defamation was published "with 'actual

---

[12] As noted earlier, the government voluntarily elected to seek a maximum sentence of six months' imprisonment in Arpaio's case in order to proceed by bench trial. Mar. 1, 2017 Order, *United States v. Arpaio*, No. 2:16-cr-01012-SRB (D. Ariz.) (Dkt. No. 83), at 2-3. In referring the matter for criminal prosecution, Judge Snow expressly did "not suggest whether this prosecution should be charged as the equivalent of a misdemeanor or a felony offence." *Melendres v. Arpaio*, 2016 WL 4414755, at *2 n.1 (D. Ariz. Aug. 19, 2016).

malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80.  "In other words, a public-official or public-figure plaintiff must demonstrate that a publisher either actually knew that a published statement was false, or recklessly disregarded whether it might be false." *Kahl*, 856 F.3d at 113; *see St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  "[I]t is not enough to show that defendant should have known better; instead, the plaintiff must offer evidence that the defendant in fact harbored subjective doubt." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016).

This is a deliberately "daunting" standard, *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), and courts in this Circuit and across the country routinely dismiss cases for failure to plead facts sufficiently alleging actual malice.  *See, e.g.*, *Deripaska*, 282 F. Supp. 3d at 143 (dismissing complaint); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93 (D.D.C. 2018) ("Ms. Fairbanks' allegations do not provide clear and convincing evidence of actual malice. . . .  So Ms. Fairbanks has failed to state a claim and her case should be dismissed."); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 134 (D.D.C. 2009) (dismissing complaint); *Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016) ("The Complaint does not allege any facts supporting the claim that [defendants] made statements knowing they were false or with reckless disregard to their truth.  The bald allegations of the Complaint are insufficient to allege malice."), *aff'd per curiam*, 690 F. App'x 1 (D.C. Cir. 2017).[13]

Here it is indisputable that the actual malice standard applies to Arpaio's claims, as he is a public official and public figure.  And it is equally uncontestable that the Complaint fails to allege facts establishing actual malice on the part of the CNN Defendants.

---

[13] *See also, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[A]fter *Iqbal* and *Twombly*, every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.").

1.      **The Actual Malice Standard Applies.**

"Whether the plaintiff is a public figure is a question of law for the court to resolve." *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1293 n.12 (D.C. Cir. 1980).  Arpaio is a prototypical public official and public figure subject to the actual malice standard.

First, as a candidate for United States Senate bringing suit arising out of his campaign coverage, Arpaio is a textbook public figure.  The Supreme Court has instructed that "it is abundantly clear that . . . publications concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office," and has specifically held that the actual malice standard applied to a candidate for U.S. Senate. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971) (quotation marks omitted).[14]  "[I]t can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office," like Arpaio's.  *Id.* at 271-72.  After all, the actual malice standard was created in recognition of the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Sullivan*, 376 U.S. at 270.  That is why "[t]he cases are unanimous in extending [*Sullivan*] to all candidates for elective state or federal office at all levels."  David A. Elder, *Defamation: A Lawyer's Guide* § 5:3 (West 2018).[15]

---

[14] While some courts have considered candidates as "public officials," the Supreme Court in *Monitor Patriot* suggested that "it might be preferable" to consider them public figures, though "the question is of no importance so far as the standard of liability in [the] case is concerned." 401 U.S. at 271.

[15] *See also, e.g.*, *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300–01 (1971) ("Public discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* rule."); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 687 (1989) ("Vigorous reportage of political campaigns is necessary for the optimal functioning of democratic institutions and central to our history of individual liberty.") (quotation marks omitted).

Second, the speech at issue concerns Arpaio's conduct as a publicly-elected sheriff and related criminal contempt proceedings arising out of his conduct as sheriff.  Indeed, the Supreme Court applied the actual malice to a deputy sheriff in the seminal *St. Amant* case, *see* 390 U.S. at 730 & n.2, and "[l]ower courts have consistently held that [the public official] standard fits the responsibility of law enforcement officers, particularly those with supervisory authority" like Arpaio, *Thompson v. Armstrong*, 134 A.3d 305, 312 (D.C. 2016).

Third, as noted above, Arpaio has "thrust himself to the forefront" of public controversies on issues related to criminal justice and immigration.  *Kahl*, 856 F.3d at 115.  Thus, even aside from his status as a candidate and public officeholder, he further would qualify as a limited-purpose public figure on this basis alone.  *See, e.g.*, *Arpaio*, 2017 WL 3268180, at *2-3 (emphasizing Arpaio's numerous national media interviews in which he expressed his views on racial profiling).

Ultimately, it does not appear that Arpaio even contests his status as a public figure and public official.[16]  The CNN coverage at issue is clearly entitled to the protection of the actual malice standard.

### 2.    The Threadbare Allegations of Actual Malice Do Not State a Claim.

In the face of the "daunting" standard of actual malice, *McFarlane*, 74 F.3d at 1308, Arpaio's Complaint does no more than regurgitate the bare elements of the standard.  *See* Compl. ¶ 40 (alleging that "Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity").  But such "[t]hreadbare recitals of the elements of a cause of action" plainly do not meet the pleading

---

[16] In a defamation suit that Arpaio filed against the *New York Times* currently pending in this Court, he has not disputed that he is a public figure. *See, e.g.*, Resp. in Opp. to Mot. to Dismiss, *Arpaio v. Cottle*, No. 18-cv-2378 (Dkt. No. 11), at 10-16.

requirements.  *Iqbal*, 556 U.S. at 678; *Hourani*, 164 F. Supp. 3d at 144 (same).  There must be "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, not "a formulaic recitation of the elements," *id.* 678 (quotation marks omitted).

In short, the Complaint here simply "does not allege any facts supporting the claim that [the CNN Defendants] made statements knowing they were false or with reckless disregard to their truth," and that is fatal.  *Hourani*, 164 F. Supp. 3d at 144; *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 319 (D.D.C. 2011).

Indeed, it would be impossible for Arpaio to plausibly allege that the CNN Defendants acted with actual malice.  To the extent there was any error in the segment, it was fleeting and immediately corrected.  Cuomo unambiguously clarified that Arpaio was "convicted of a misdemeanor.  He's not a convicted felon, like I said."  Ex. A, at 3:55.  Such a correction "is significant and tends to negate any inference of actual malice."  *Hoffman v. Wash. Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978); *Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978) (same, concluding that "plaintiff cannot and has not shown that the articles were published with actual malice").

This case implicates precisely the kind of good-faith mistake that the actual malice standard is supposed to inoculate.  For more than fifty years, the Supreme Court has instructed that errors are "inevitable" in the course of debate in a free society and "must be protected if the freedoms of expression are to have the breathing space that they need to survive."  *Sullivan*, 376 U.S. 271-72 (quotation marks omitted); *see also, e.g.*, *St. Amant*, 390 U.S at 732 ("[T]o insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones."); *Time, Inc. v. Pape*, 401 U.S. 279, 292 (1971).  If such a single fleeting error could give rise to actual malice and expose

journalists to suit in the course of covering our nation's political candidates, there would be no real "breathing space" for a free press at all.

Because the Complaint fails to adequately allege actual malice, it must be dismissed.  *See Deripaska*, 282 F. Supp. 3d at 143; *Sinclair*, 596 F. Supp. 2d at 134; *Fairbanks*, 314 F. Supp. 3d at 93.

## II.   THE COMPLAINT FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE AND FALSE LIGHT INVASION OF PRIVACY.

Arpaio's failure to plausibly allege either substantial falsity or actual malice is dispositive not only of his defamation claim, but also of his tortious interference and false light claims.  It is well-established that these torts are subject to the same First Amendment defenses that bar defamation liability.  *See, e.g.*, *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) ("[P]ublic figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice.'"); *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013) ("Because [Plaintiffs'] defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech.") (dismissing claims for false light and tortious interference).  In short, Arpaio cannot plead around First Amendment requirements simply by invoking other torts.

Moreover, even setting aside these clear constitutional bars, each of these torts is insufficiently pleaded for further independent reasons.

### A.   The Claim for Tortious Interference Fails for Independent Reasons.

"The elements of a successful claim for tortious interference with a prospective business advantage are (1) the existence of a valid business relationship or other expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional

interference causing termination of the relationship or expectancy or causing a failure of performance by one of the parties; and (4) resultant damage." *Marshall v. Allison*, 908 F. Supp. 2d 186, 202 (D.D.C. 2012), *aff'd per curiam*, 554 F. App'x 20 (D.C. Cir. 2014); *Williams v. Fed. Nat'l Mortg. Ass'n*, 2006 WL 1774252, at *8 (D.D.C. June 26, 2006) (same).   Arpaio's Complaint fails to plead most, if not all, of these elements.

First, there is no plausible claim that the CNN Defendants had any knowledge of the claimed prospective relationship—the potential that Arpaio might obtain funding from the Republican National Committee, the National Republican Senate Campaign Committee, and affiliated entities in connection with his 2020 U.S. Senate bid.   Compl. ¶¶ 33, 45, 48.   "Specific facts about the terms of the relationships . . . are necessary to state a plausible claim," and they are absent here.   *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 229 (D.D.C. 2016); *see also, e.g.*, *Maib v. FDIC*, 771 F. Supp. 2d 14, 19 (D.D.C. 2011) (complaint does not allege a plausible claim of tortious interference where "it does not allege any facts that would show that [the defendant] had knowledge of that [alleged] relationship") (applying similar Florida common law).   Arpaio's Complaint states little more than the element itself, claiming that "Defendants are aware of these prospective business relationships."   Compl. ¶ 47.   That is insufficient.   *Iqbal*, 556 U.S. at 678; *Econ. Research Servs., Inc.*, 208 F. Supp. 3d at 229. Further, what he does plead defies reason: alleging that the CNN Defendants had knowledge of Arpaio's still-forthcoming "2020 political campaign" at the start of his 2018 campaign.   Compl. ¶ 48 (emphasis added).

Second, it is well established that "[a] valid business expectancy requires a probability of future contractual or economic relationship and not a mere possibility."   *Marshall*, 908 F. Supp. 2d at 202-03 (quotation marks omitted).   But there are no facts supporting a <u>probability</u> that

Arpaio—a controversial, fringe candidate—would get money from "the RNC and its RNCC, in conjunction with affiliated political action committees." Compl. ¶ 46. As Arizona GOP Senator Jeff Flake opined at the time in 2018, "better write about [Arpaio's candidacy] and talk about it fast because it won't last long." Ex. A, at 2:32. The Complaint contains nothing more than a bald, hopeful claim of "chances" of future relationships with party entities. Compl. ¶ 33.

Third, for similar reasons, the allegations of causation and damages are too speculative. "In the absence of factual support, [P]laintiff's allegations of . . . 'damages' suffered are insufficient under *Twombly*." *McNamara v. Picken*, 866 F. Supp. 2d 10, 16 (D.D.C. 2012). Arpaio vaguely claims that "his chances of obtaining funding from the Republican establishment and donors for the 2020 election have been damaged by the publication of false and fraudulent representations in the Defamatory Article." Compl. ¶ 33. But, again, this appears to be based on no more than rank speculation.

In short, for any or all of these reasons, Arpaio's claim for tortious interference fails.

**B.      The Claim for False Light also Fails for Independent Reasons.**

"Claims of false light publicity require the plaintiff to show: (1) publicity; (2) about a false statement, representation, or imputation; (3) understood to be out of and concerning plaintiff; and (4) which places plaintiff in a false light that would be highly offensive to a reasonable person." *Washburn v. Lavoie*, 357 F. Supp. 2d 210, 216 (D.D.C. 2004), *aff'd*, 437 F.3d 84 (D.C. Cir. 2006).

In addition to all of the constitutional grounds discussed above, Arpaio has failed to state a claim for false light because "no reasonable person could conclude that [CNN's] statements put [Plaintiff] in a 'highly offensive' false light." *Smith v. Clinton*, 886 F.3d 122, 129 (D.C. Cir. 2018) (per curiam). "[A] reasonable person would have to consider the defendants' statements in the context within which they were made." *Washburn*, 357 F. Supp. 2d at 216. And here, as

explained above, the crime of contempt was correctly identified—as was the fact that Arpaio received a pardon. The offense was even specifically identified as a misdemeanor both in the report itself and in the immediate on-air correction. A correction is surely the <u>opposite</u> of highly offensive. *See Benz v. Wash. Newspaper Publ'g Co.*, 2006 WL 2844896, at *5 (D.D.C. Sept. 29, 2006) (dismissing false light claim arising out of statement in correction).

## III.   FOR ADDITIONAL REASONS, THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JEFF ZUCKER.

The claims against Jeff Zucker, CNN's President, should be dismissed with prejudice for all of the reasons already discussed. They warrant dismissal for even the additional reason that there are no facts alleged tying Zucker, a senior executive at the network, to Cuomo's passing reference to "felon" in introducing the report at issue.

Where a "Plaintiff has not indicated any specific facts which would support the conclusion that [an officer] participated in any form in the preparation or publication of the articles which are the bases of this action," the claim must be dismissed. *Tavoulareas v. Piro*, 93 F.R.D. 11, 15 (D.D.C. 1981); *see also, e.g.*, *Cerasini v. Sony Corp.*, 991 F. Supp. 343, 351 (S.D.N.Y. 1998) ("Where a defendant has no 'actual part in composing or publishing,' he cannot be held liable 'without disregarding the settled rule of law by which no man is bound [by] the tortious act of another over whom he has not a master's power of control.'") (citation omitted); *Brewer v. Am. Nat'l Ins.*, 636 F.2d 150, 154 (6th Cir. 1980) ("In the present case, there is no evidence [the supervisor] made any defamatory statements or caused any defamatory statements to be made. Thus, [the supervisor] cannot be personally liable for defamation."); *Folwell v. Miller*, 145 F. 495, 496 (2d Cir. 1906) (corporate president "is not personally liable because of his official capacity, any more than are the directors or stockholders, for torts committed by the corporation, in the absence of personal participation in the tortious act").

Here, the Complaint merely alleges that "Defendant Cuomo acted at the direction of Defendant Zucker or alternatively his false statements were ratified by Defendant Zucker." Compl. ¶ 37.  Plaintiff has not alleged any specific, plausible facts to suggest that Zucker was involved in any way with the publication at issue.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice with respect to each of the CNN Defendants.

Dated:  March 15, 2019                     Respectfully submitted,

                                           WILLIAMS & CONNOLLY LLP

                                           By:  /s/ Stephen J. Fuzesi
                                           Kevin T. Baine
                                           Stephen J. Fuzesi
                                           Nicholas G. Gamse
                                           725 Twelfth Street, N.W.
                                           Washington, DC 20005
                                           Telephone: (202) 434-5000
                                           Facsimile: (202) 434-5029
                                           sfuzesi@wc.com

                                           *Attorneys for Defendants Jeff Zucker, Chris Cuomo, and Cable News Network, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2019, a copy of this Motion to Dismiss and related papers was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

Dated:  March 15, 2019                                                    By:  /s/ Nicholas G. Gamse
                                                                                         Nicholas G. Gamse