## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH MICHAEL ARPAIO**,

      **Plaintiff**,

v.

**JEFF ZUCKER, CHRIS CUOMO, CABLE NEWS NETWORK, INC., KEVIN ROBILLARD, HUFFINGTON POST, TESSA STUART and ROLLING STONE**,

      **Defendants**.

**Civil Action No. 1:18-cv-002894 (RCL)**

### PLAINTIFF SHERIFF ARPAIO'S NOTICE OF BENCH BRIEF CONCERNING ACTUAL MALICE AS IT RELATES TO THIS COURT'S DECISION IN *LOHRENZ V. DONNELLY*

Plaintiff Joseph Michael Arpaio ("Plaintiff Sheriff Arpaio") respectfully submits this bench brief in response to an issue raised by the Court at the hearing of July 25, 2019. As offered by Plaintiff at the hearing, he therefore respectfully submits this short "bench brief":

### INTRODUCTION

First, the facts of this case distinguish it from *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) and render this honorable Court's prior decision not applicable at this stage of the pleading process. There, this Court based its decision on a summary judgment standard where the parties were afforded discovery. Moreover, the defendants there provided reliable source materials and received confirmation of many of the underlying facts upon which they based their allegedly defamatory falsehoods.

Second, a correction or retraction of a defamatory article or publication does not negate a showing of actual malice. Indeed, even good motives do not infer an absence of malice. In order to confirm malice, courts permit plaintiffs to also prove actual malice by relying on

circumstantial evidence. Here, without discovery, Plaintiff Sheriff Arpaio is not afforded an opportunity to show the circumstantial evidence that proves Defendants acted with actual malice.

Finally, a correction or retraction is only to be considered by a jury as a mitigating factor in assessing a damage award; a correction <u>does not</u> preclude a case from proceeding because it cannot erase the injury sustained by a plaintiff. For all of these compelling reasons, Defendants' motions to dismiss must be denied.

## ARGUMENT

I.    **The *Lohrenz* Case Is Inapposite Because the Court Analyzed the Issues Based on the Higher Summary Judgment Standard, the Plaintiff Was Afforded Ample Discovery Before the Court Granted the Defendants' Motion for Summary Judgment, and the Defendants Provided the Court with Reliable Sources.**

In *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002), because the Court found that the plaintiff was a public figure, *id*. at 44, the parties tasked this honorable Court with determining whether the defendants acted with actual malice when they published false statements of fact concerning the plaintiff. *Id*. at 45. There, a female Navy pilot sued four defendants for libel, slander and invasion of privacy concerning allegedly false reports accusing her of being a "sub-standard pilot who often received benefits and training that her male counterparts did not receive." *Id*. at 31. The allegations in one of the reports were that "female and male naval aviators were treated differently because female aviators were promoted on a lower standard." *Id*. at 32. Ultimately, this Court found that the defendants did not act with actual malice. *Id*. at 45-59. But, the analysis the Court implemented there cannot apply to this case for several reasons.

First, and most obviously, this Court, after discovery was undertaken, granted the defendants' motion for summary judgment – a much higher threshold for a plaintiff to overcome in order for a case to continue – not on a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss, which

is what Defendants in this case prematurely asks of this Court. In *Lohrenz*, the parties completed discovery, and the Court was able to rely on witness testimony and expert witness testimony. *Id*. at 36. Here, "[t]he standard to be applied in evaluating the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) **is a stringent one**. In appraising the sufficiency of the complaint courts must follow the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McBride v. Merrell Dow & Pharmaceuticals*, 717 F.2d 1460, 1465 (D.C. Cir. 1983) (emphasis added).

Second, according to this Court in *Lohrenz*, "[i]n determining actual malice, the first finding to which the Court must attend is identifying those [] sources upon which defendants did rely in publishing the alleged libel. *Id*. at 48. Here, of course, Defendants have not said which sources they relied upon in publishing their false statements about Plaintiff Sheriff Arpaio because he has not been afforded discovery. In *Lohrenz*, the Court noted that the plaintiff there *conceded* that the defendants: (1) asked a lieutenant about the extent of his interactions with plaintiff; (2) learned about who would be able to send plaintiff's training records; (3) learned who was an instructor for plaintiff; (4) and asked the lieutenant to put his statements in writing. *Id*. at 50. All of these concessions concerned reliable sources that the defendants had relied upon.

Moreover, in finding no actual malice in *Lohrenz*, the Court also noted that defendants did in fact "make attempts to investigate the veracity of the information contained in the December letter . . . [a]s part of her investigation, defendant met several times with Navy officials and reviewed at least one Navy report." *Id*. at 53. In other words, this Court found that the defendants did not act with actual malice, "particularly because defendants **did receive confirmation** of many of the underlying facts upon which they based their allegedly defamatory

falsehoods[.]" *Id*. at 58 (emphasis added). Here, there can be no such finding because Plaintiff Sheriff Arpaio is unequivocally **not** a "convicted felon[,]" was **not** "sent to prison for contempt of court[,]" and is **not** an "ex-felon." *See* Compl. at ¶¶ 20, 24, 28, respectively. No one can confirm that he is any one of these defamatory accusations.

Third, the Court found that "[c]ontrary to plaintiff's assertion that the Navy Inspector General Report conclusively rebutted the [defendants'] Report . . . the Report followed the same pattern of partial agreement and partial disagreement that characterized defendants' interactions with the Navy." *Id*. at 57. Here, there is no question that what Defendants published was entirely false. There can be no "partial disagreement" that Plaintiff Sheriff Arpaio is a "convicted felon[,]" "sent to prison for contempt of court[,]" or an "ex-felon[.]" Importantly, even in *Lohrenz*, this Court **rejected** the defendants' substantial truth defense, even though what the defendants published there arguably could have been considered substantially true, taking the "partial agreement" and "partial disagreement" characterization in *Lohrenz* at face value.

Fourth, to the extent that there were errors in the defendants' reports, the Court found that it "w[ould] not impose liability for mere factual error – an everyday occurrence in journalism – unless those errors rise to the level of circumstantial evidence of 'actual malice.'" *Id*. at 55. Here, there is a *considerable* difference between an error which occurs in everyday journalism and three different news organizations falsely publishing that Plaintiff Sheriff Arpaio is a convicted felon who was sent to prison for contempt of court, particularly when he had been at the forefront of the news because of his candidacy for U.S. Senate.

Each of these critical distinctions is sufficient to warrant the *Lohrenz* case inapplicable at this stage of the pleading process. However, taken together, there can be no question that it is premature to dismiss Plaintiff Sheriff Arpaio's case based on a cursory alleged lack of actual

malice.

## II.    A Defendant's Belated Correction, After the Original Damage Has Been Done, Does Not Negate a Showing of Actual Malice.

A retraction in and of itself does not negate a showing of actual malice. In fact, according to U.S. Supreme Court precedent, "[g]ood motives and belief in truth do not [even] negate an inference of malice, but are relevant only in mitigation of punitive damages if the jury chooses to accord them weight." *New York Times Co. v. Sullivan*, 376 U.S. 254, 267 (1964). In *McBride v. Merrell Dow & Pharmaceuticals*, 717 F.2d 1460, 1465 (D.C. Cir. 1983), a teratologist claimed that a pharmaceutical company disseminated defamatory articles as part of a scheme to silence him and to stall access to the courts for maimed babies. *Id.* at 1462. The defendants there issued a correction in a subsequent article. Concerning the alleged correction, the U.S. Court of Appeals for the District of Columbia Circuit held that they [the panel] "do [not] indicate any view whether other parts of the articles or the retraction made sufficiently remove any defamatory implication from the statement . . ." *Id.* at 1465. By ruling that the retraction did **not** remove any defamatory implication from the statement, the Court confirmed that a correction or retraction does not negate a showing of actual malice.

Moreover, it is the common law view that a retraction or correction may rebut a presumption of actual malice **only** in the totality of the circumstances, and thus in order to find an absence of actual malice because of an alleged retraction or correction, questions of malice requires a finding of fact to be submitted to a jury. *See Kerwick v. Orange County Publication Division of Ottaway Newspapers, Inc.*, 52 N.Y.2d 625, 626, 420 N.E.2d 970 (1981) (finding that while retraction might be considered evidence of lack of malice in certain instances, it "would not be sufficient as a matter of law for that purpose"); *see also Di Lorenzo v. New York News, Inc.*, 81 A.D.2d 844, 848 (1981).

In *Lohrenz*, this Court recognized that "defendants are not likely to willingly confess []
their ill intentions[,]" *Lohrenz*, 223 F. Supp. 2d at 45-46, and cited the U.S. Supreme Court case
of *Harte-Hanks Comm. Inc. v. Connaughton*, 491 U.S. 657 (1989), which stands for proposition
that motive is "supportive," probative, and admissible evidence, *id*. at 666-68, and that a
"plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence[.]"
*Id*. at 668. There is no doubt that Defendants here are rabid and left-leaning haters of Plaintiff
Sheriff Arpaio and the president who he supports, and fundamentally despise Plaintiff Sheriff
Arpaio's anti-illegal immigration views and actions. And, common law malice is a typical factor
in a constitutional malice finding. David A. Elder, Defamation: A Lawyer's Guide § 7:3, at 58-
61 (1993); *see also Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1170 (5th Cir. 2006) (a "smear
campaign involving a calculated and relentless attempt by [one party] that will go to any lengths
to destroy [the other] was evidence of malice). Here, as illustrated at length in Plaintiffs'
oppositions to Defendants' motions to dismiss, Defendants had a motive to defame Plaintiff
Sheriff Arpaio and he pled that Defendants had obvious reasons to doubt the veracity of their
own statements.

In any event, whether Defendants acted with a reckless disregard for the truth is a
question of fact that cannot be properly resolved on a motion to dismiss. *See e.g., Hutchinson v.
Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("actual malice" calls a defendant's state of mind into
question . . . and does not readily lend itself to summary disposition"); *Flowers v. Carville*, 310
F.3d 1118, 1131 (9th Cir. 2002) (observing that "malice" cannot properly be determined on a
motion to dismiss).

III.   **A Defendant's Correction May Only Be a Mitigating Factor for the Amount of
Damages a Plaintiff is Awarded, Nothing More.**

A subsequent correction of a defamatory article or publication, no matter how quickly

executed, goes to a mitigation of damages. It does not preclude the suit from moving forward. "[A] retraction in any case is but poor atonement" and corrections and retractions may be used to mitigate damages in a defamation case such as this but do not absolve a defendant of liability. *Storey v. Wallace*, 60 Ill. 51, 56 (1871). Indeed, a correction or retraction cannot erase the injury sustained by a plaintiff.

Pursuant to District of Columbia law, "[a] retraction may affect the measure of damages[.] These are matters of the mitigation of the harm caused . . ." *Am. Postal Workers Union v. U.S. Postal Servs.*, 265 U.S. App. D.C. 146, 830 F.2d 294, 324-325 (1987). "There are partial defenses open to the defendant, which will not avoid his liability, but will go to reduce the damages recovered by the plaintiff. Perhaps the most important of these is a retraction of the defamatory statement." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 116A, at 845 (5th ed. 1984). "In neither a defamation nor an employee discipline case does a retraction suddenly and retrospectively bring the full protection of the first amendment to bear upon a statement actionable or punishable when first made." *Am. Postal Workers Union*, 830 F.2d at 325.

Many courts have held that retractions may only be used to mitigate damages. *See, e.g.*, *Koontz v. Weide*, 111 Kan. 709, 208 P. 651 (Kan. 1922) (a retraction does not bar the recovery of damages but may mitigate damages); *Whitcomb v. Hearst Corp.*, 329 Mass. 193, 107 N.E.2d 295, 300 (Mass. 1952) (a retraction is an affirmative defense to damages "with the burden of proof upon the defendants to convince the jury of the extent to which the damages had been mitigated"); *Davis v. Marxhausen*, 103 Mich. 315, 61 N.W. 504 (Mich. 1894) (a retraction is admissible to mitigate damages but may not be used to explain the circumstances under which the original publication was made); *Dixie Fire Ins. Co. v. Betty*, 101 Miss. 880, 58 So. 705 (Miss.

1912) (a retraction cannot bar a defamation claim but may be considered by a jury in mitigating damages); *DiLorenzo v. N.Y. News, Inc.*, 78 A.D.2d 669, 432 N.Y.S.2d 483, 487 (N.Y. App. Div. 1980) (holding a retraction can be used to mitigate damages); *Rogers v. Florence Printing Co.*, 106 S.E.2d 258, 263 (S.C. 1958) ("[r]etraction of a libel is matter to be considered in mitigation, but does not bar punitive damages in the absence of a statute so providing."). District of Columbia law has no such statute.

Importantly, mitigation by reason of retraction is strictly an issue for the jury. *Taylor v. Hearst*, 107 Cal. 262, 272, 40 P. 392 (1895); *Behrendt v. Times-Mirror Co.* 30 Cal. App. 2d 77, 88-89 (1938); *Storey v. Wallace*, 60 Ill. at 56; *White v. Sun Publishing Co.*, 164 Ind. 426, 428, 73 N.E. 890 (1905); *Tresca v. Maddox*, 11 La. Ann. 206, 208 (1856); *Post Publishing Co. v. Butler*, 137 Fed. 723, 728 (6th Cir. 1905); *Ellis v. Brockton Publishing Co.*, 198 Mass. 538, 542 (1908) ("The publication of a retraction, complete in character and conspicuous in position, *might be found* to have a material effect in diminishing the mischief caused by the libel . . .") (emphasis added).

In *Whitcomb v. Hearst Corp.*, 329 Mass. 193, 107 N.E.2d 295 (Mass. 1952), for example, newspapers printed articles that misidentified an officer as the defendant in a military prosecution for theft in Germany when in fact another officer was tried and convicted of the crime. The publishers printed conspicuous, full and complete retractions. *Id.* at 198. The innocent officer filed libel actions against the publishers. The Supreme Court of Massachusetts overruled exceptions taken by the publishers and ruled that the retractions and that the degree to which the damages were mitigated by the retractions was a question for the jury. *Id.* at 203. "Retractions are affirmative defenses as to damages, with the burden of proof upon defendants to convince the jury of the extent to which damages had been mitigated." *Id.* at 202.

The common law's insistence that retraction can mitigate, rather than eliminate, damages appears rooted in a consistent belief that "the truth rarely catches up with a lie." *Gertz v. Robert Welch*, 418 U.S. 323 (1974). Naturally, retraction ceases to reliably indicate an absence of malice because, for example, a retraction may be motivated not by regret for past error, but by a desire to reap the benefits of a favorable dismissal or a reduced defamation judgment. As the U.S. Supreme Court recognized, "[r]etractions are rarely 'hot' news and thus will rarely reach the same audience as the initial publication." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 46 (1971). The damage in this case had already been done, despite any alleged correction.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied. The facts of this case render *Lohrenz* inapplicable prior to discovery and that Defendants' rest on their alleged "correction" as proof positive that they cannot be found to have acted with actual malice is not only misplaced but also flatly wrong. This case respectfully should proceed to discovery, and if Defendants so choose, the summary judgment stage, and then ultimately to trial. Publishing falsely to the world that Plaintiff Sheriff Arpaio is a convicted felon who was sent to prison for criminal contempt of court severely damaged him, regardless of whether the original publication was corrected or not. By Defendant CNN's own admission, the online video publishing that Plaintiff was a "convicted felon" was not corrected for almost a year. Other so-called "corrections" were discussed at the hearing. Indeed, in today's world of social media, the original publications have widely proliferated on the Internet, among other media sources and providers. These extreme defamatory attacks are not the type of free speech the U.S. Supreme Court seeks to protect. Defendants must finally be held accountable for their extreme and reckless defamatory and related behavior.

Plaintiff has ordered and expedited copy of the transcript of yesterday's hearing and will have it filed on the record for the Court's convenience and possible review.

Dated: July 26, 2019                                Respectfully submitted,

                                                    */s/ Larry Klayman*
                                                    Larry Klayman, Esq.
                                                    D.C. Bar No. 334581
                                                    Chairman and General Counsel
                                                    FREEDOM WATCH, INC.
                                                    2020 Pennsylvania Ave. N.W.
                                                    Suite 345
                                                    Washington, DC 20006
                                                    Tel: (561) 558-5336
                                                    Email: leklayman@gmail.com

                                                    *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of July 2019, a true and copy of the foregoing was filed and served by electronic filing upon counsel listed on the Notice of Electronic Filing:

Stephen J. Fuzesi
Kevin T. Baine
Nicholas G. Gamse
WILLIAMS & CONNOLLY, LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
sfuzesi@wc.com

*Attorneys for Defendants Jeff Zucker,*
*Chris Cuomo, and Cable News Network, Inc.*

Alison Schary
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
Telephone: (202) 973-4248
Facsimile: (202) 973-4499

alisonschary@dwt.com

Elizabeth A. McNamara
Rachel F. Strom
DAVIS WRIGHT TREMAINE, LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Telephone: (212) 489-8230

*Attorneys for Defendants Tessa Stuart & Rolling Stone*

Elizabeth Baldridge
JASSY VICK CAROLAN, LLP
800 Wilshire Boulevard
Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
ebaldridge@jassyvick.com

*Attorneys for Defendants TheHuffingtonPost.com, Inc. and Kevin Robillard*


*/s/ Larry Klayman*
Larry Klayman