UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
JOSEPH MICHAEL ARPAIO,          )
              Plaintiff,        )  Civil Action
vs.                             )  No. 18-2894
                                )
JEFF ZUCKER, et al.,            )  July 25, 2019
                                )
              Defendants.       )  10:36 a.m.
                                )  Washington, D.C.
                                )
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE ROYCE C. LAMBERTH,**
**UNITED STATES DISTRICT COURT SENIOR JUDGE**


**APPEARANCES:**

**FOR THE PLAINTIFF:**          LARRY E. KLAYMAN
                                2020 Pennsylvania Avenue, NW
                                Suite 800
                                Washington, DC 20006
                                (310) 595-0800
                                Email: Leklayman@gmail.com


**FOR J. ZUCKER,**             STEPHEN J. FUZESI
**C. CUOMO and CNN:**          KEVIN TAYLOR BAINE
                                NICHOLAS G. GAMSE
                                725 12th St. NW
                                Washington, DC 20005
                                (202) 434-5010
                                Email: Sfuzesi@wc.com


**FOR K. ROBILLARD,**          JEAN-PAUL JASSY
**HUFFINGTON POST:**           JASSY VICK CAROLAN LLP
                                800 Wilshire Boulevard, Suite 800
                                Los Angeles, CA 90017
                                310-870-7048


**(APPEARANCES CONTINUED)**

**APPEARANCES (continued):**


-AND-

                    LAURA FRAHER
                    SHAIRPO, LIFSCHITZ & SCHRAM, PC
                    1742 N Street, NW
                    Washington, DC 20036-2912
                    (202) 689-1900
                    Email: Fraher@slslaw.com


**FOR ROLLING STONE,**  ALISON SCHARY
**TESSA STUART:**       Davis Wright Tremaine LLP
                    1919 Pennsylvania Avenue, N.W.
                    Suite 800
                    Washington, DC 20006
                    (202) 973-4248
                    Email: Alisonschary@dwt.com




Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter
                    Washington, D.C.  20001


        Proceedings reported by machine shorthand,
   transcript produced by computer-aided transcription.

1              **P R O C E E D I N G S**

2              THE DEPUTY:  Good morning, everyone.

3              We're here for Civil Action 18-2894, Joseph

4     Michael Arpaio, excuse my pronunciation, versus Jeff Zucker,

5     et al.

6              All counsel, please approach the lectern and

7     identify yourselves for the record.

8              MR. KLAYMAN:  Good morning, Your Honor.

9     Larry Klayman for Sheriff Arpaio.

10             MR. FUZESI:  Good morning, Your Honor.

11    Stephen Fuzesi for the CNN defendants, CNN, Jeff Zucker, and

12    Chris Cuomo.

13             THE COURT:  Okay.

14             MR. BAINE:  Kevin Baine, Your Honor, also for the

15    CNN defendants.

16             MR. GAMSE:  Nicholas Gamse for the CNN defendants.

17    Good morning.

18             THE COURT:  Okay.

19             MS. SCHARY:  Good morning, Your Honor.

20    Allison Schary for the Rolling Stone defendants, Rolling

21    Stone and Tessa Stuart.

22             MR. JASSY:  Good morning, Your Honor.

23    Jean-Paul Jassy for the Huffington Post defendants,

24    Huffingtonpost.com, Inc. and Kevin Robillard.

25             THE COURT:  Okay.

1          MS. FRAHER:  Good morning, Your Honor.

2     Laura Fraher also for the Huffington Post defendants.

3          THE COURT:  Okay.  Did the defendants talk about

4     how you all want to -- who wants to go first, or how you

5     want to do it?

6          MR. FUZESI:  We did, Your Honor.  If it's

7     agreeable to Your Honor, I will go first.

8          THE COURT:  Sure.  Go ahead.

9          MR. FUZESI:  Okay.

10          THE COURT:  It's the defendant's motion, so we'll

11     start with your motions.

12          MR. FUZESI:  Good morning, Your Honor.

13          This case involves an elected sheriff who was

14     convicted of the federal crime of criminal contempt, found

15     guilty beyond a reasonable doubt of knowingly and willfully

16     disregarding a court order that was put in place to prevent

17     him from violating constitutional rights.  He now sues CNN

18     over one word in one broadcast that was not immediately

19     clarified but then immediately corrected.  There is no legal

20     basis for his claims, and they should be dismissed.

21          Your Honor, they should be dismissed for two main

22     independent reasons; and I will address both.

23          First, what CNN reported about Sheriff Arpaio's

24     conviction was not false; at the very least, it was

25     substantially true, which is all that the law of defamation

1    requires.  And, second, Sheriff Arpaio, who concedes he is a

2    public figure, does not come close to pleading the actual

3    malice required under the *Iqbal* standard.

4         If I could, Your Honor, I would like to start with

5    substantial truth or substantial falsity.  Sheriff Arpaio,

6    in his papers, acknowledges that the standard is substantial

7    truth, substantial falsity; that is, whether the gist or the

8    sting of the report is justified.  It's not about literal

9    accuracy or technical precision.  It's not about whether

10   there are some inaccuracies, whether the allover gist or

11   sting of the report is justified.

12        What Sheriff Arpaio ignores is what CNN actually

13   said on the air during the broadcast.  CNN reported on

14   Sheriff Arpaio's run for the U.S. Senate, like many news

15   organizations did at the time.

16        In introducing the report, the anchor, Chris

17   Cuomo, briefly referenced his conviction as a felony instead

18   of a misdemeanor.  The report that he introduced then

19   immediately clarified exactly what he was convicted of --

20        THE COURT:  And this is in one -- this is one

21   whole, like, four minutes?

22        MR. FUZESI:  That's right.  That's exactly right.

23        THE COURT:  So the report, in that four minutes,

24   contains the correct characterization that it was not a

25   felony, that it was a misdemeanor.  It didn't say not a

1    felony.

2              MR. FUZESI:  Yes.  That's exactly right.

3              THE COURT:  And it's within that four minutes when

4    Cuomo comes back in and says:  I made a mistake; it was not

5    a felony, it was a misdemeanor.

6              MR. FUZESI:  That's exactly right.

7              THE COURT:  So the correction is all in that one

8    four-minute segment?

9              MR. FUZESI:  It is one segment.

10             THE COURT:  It's all played at one time --

11             MR. FUZESI:  That's exactly right.

12             THE COURT:  -- on air?

13             MR. FUZESI:  That's exactly right.

14             THE COURT:  And then Cuomo invites the sheriff to

15   come back that night to another program; and the sheriff

16   came back, and there is another program.

17             MR. FUZESI:  That's right.

18             THE COURT:  So none of that is at issue.

19             MR. FUZESI:  None of that is at issue.

20             THE COURT:  So the correction is actually within

21   that four-minute segment that's all broadcast.

22             MR. FUZESI:  That's exactly right.

23             THE COURT:  So your argument is it's substantially

24   true; and you have this case law where courts have gone all

25   over the place about what contempt is and whether it's a

1   felony or misdemeanor.  Clearly, this was always a

2   misdemeanor, in terms of the Government announced from the

3   beginning it was going to be 180 days or less.  So I don't

4   know what some court has now said contempt is always a

5   felony -- I think that's a crazy ruling -- but in any event.

6           I always understood from the beginning, here, if

7   it's 180 days or less it could not be a felony because you

8   had to give a jury trial; so that's why courts do the 180

9   days or less, so they don't have to do a jury trial.  So I

10  don't know where the idea of "felony" came from; but it was

11  immediately corrected on air within that four minutes.

12          MR. FUZESI:  That's exactly right.

13          THE COURT:  Now the trouble I had with your

14  initial position, then, was what was then -- what was kept

15  and played without the correct -- without the Cuomo

16  correction -- some part of that that didn't contain the

17  Cuomo correction?

18          MR. FUZESI:  Sure.  So on the air -- which is what

19  they're suing about, is the broadcast.

20          THE COURT:  Right.

21          MR. FUZESI:  On the air you have the introduction,

22  you have the underlying report that clarifies it is criminal

23  contempt, it's a misdemeanor.  You have Chris Cuomo coming

24  back on the air saying:  I made a mistake.

25          THE COURT:  This is all on the air.

```
1            MR. FUZESI:  That's all on the air.

2            THE COURT:  Okay.

3            MR. FUZESI:  And then in the complaint -- the

4    complaint also references the fact that that broadcast was

5    also put on the CNN website.

6            THE COURT:  Okay.

7            MR. FUZESI:  My reading of the complaint is not

8    that they're actually suing about that publication on the

9    website, but that publication on the website has the

10   introduction and, then, it has the underlying report, which

11   again --

12           THE COURT:  And the report says it's a

13   misdemeanor.

14           MR. FUZESI:  Says it's a misdemeanor.

15           THE COURT:  So the report is really saying both

16   things?  His intro is saying it's a felony but also saying

17   it's a misdemeanor.  But it doesn't have the felony,

18   not-misdemeanor Cuomo correction [sic].

19           MR. FUZESI:  That's right.  It didn't until CNN --

20           THE COURT:  Until the lawsuit?

21           MR. FUZESI:  -- was alerted to the fact of the

22   lawsuit.

23           THE COURT:  Right.

24           MR. FUZESI:  Then they immediately put on --

25           THE COURT:  Right.
```

```
 1                MR. FUZESI:  If you go to the website now, you

 2      can't miss it.

 3                THE COURT:  Now, what is the website, and how do

 4      you -- explain that part to me about the website.

 5                MR. FUZESI:  Sure.  That's the exact same thing

 6      we're talking about, the posting of this report online.

 7                If you go to the website today to go to this

 8      particular report, it screams out:  This has a correction at

 9      the end now --

10                THE COURT:  Right.

11                MR. FUZESI:  When you play the report, it not only

12      has --

13                THE COURT:  Before this correction today, though,

14      how would you find that, and what do you do?  I don't know

15      that part.

16                MR. FUZESI:  It's basically buried on the CNN

17      website.  But if someone is searching for it you would

18      find --

19                THE COURT:  If you type in the sheriff's name, you

20      would come up with it?

21                MR. FUZESI:  I don't know what you would have to

22      do to get you there, Your Honor.  I don't think many people

23      actually viewed it there.  But we don't think that changes

24      the calculus at all here as to either substantial truth

25      or --
```

1           THE COURT:  Because misdemeanor and felony were

2    both there?

3           MR. FUZESI:  They were both there.  And not only

4    were they always --

5           THE COURT:  But the correction wasn't there?

6           MR. FUZESI:  That's correct.

7           THE COURT:  Why would that be?  Why would it get

8    posted that way?

9           MR. FUZESI:  Your Honor, I don't know the answer

10   to that.  There is certainly nothing in the complaint that

11   provides any background on that.

12          But I think, importantly, on-line there is always

13   the underlying report which not only said that it was a

14   misdemeanor --

15          THE COURT:  Right.

16          MR. FUZESI:  -- but told viewers exactly what he

17   was convicted of, which was criminal contempt.

18          THE COURT:  Right.  And the details of that may

19   get you into substantial -- the substantial question, right?

20          MR. FUZESI:  Well, I think --

21          THE COURT:  Not that it was just misdemeanor

22   versus felony, but what it was.

23          MR. FUZESI:  That's right.  I think -- I think

24   there are kind of multiple aspects to this "substantial

25   truths/substantial falsity" argument here.

```
1              I think, first, as Your Honor noted, what's really
2      at issue here is what was said on the air, the broadcast.
3              THE COURT:  Right.
4              MR. FUZESI:  It has to be viewed as a whole.
5              THE COURT:  That's what the complaint is, the
6      broadcast.
7              MR. FUZESI:  That's what the complaint is about.
8      That's right.
9              THE COURT:  Not what was on the website.
10             MR. FUZESI:  That's right.  That's right.  The
11     complaint references the website, but it was really about
12     the broadcast.
13             THE COURT:  But there could be an amended
14     complaint about what was on the website, I assume.
15             MR. FUZESI:  Conceivably.  There may well be an
16     argument that it falls outside the statute of limitations at
17     this point.  But I think, Your Honor, whether --
18             THE COURT:  What is the statute of limitations?
19             MR. FUZESI:  What's that?
20             THE COURT:  What is the statute of limitations?
21             MR. FUZESI:  One year.
22             THE COURT:  One year.
23             MR. FUZESI:  But I think regardless -- so let's
24     say -- let's first take the broadcast.  I think --
25     obviously, it has to be viewed as a whole, which is the
```

1    Black Letter Law of defamation --

2              THE COURT:  Right.

3              MR. FUZESI:  It's the cardinal principle of

4    defamation, as the D.C. Circuit has said in the *Tavoulareas*

5    decision.  There you have, as Your Honor pointed out, the

6    correction essentially in the underlying report clarifying

7    exactly what it was, criminal contempt, and noting, also,

8    the legal classification that it was a misdemeanor, and you

9    have Chris Cuomo's correction taken as a whole.  It's not

10   even false, we maintain Your Honor, let alone substantially

11   false.

12             Then, if one wanted to look at the online report,

13   it still has the underlying report which clarifies again

14   exactly what he was convicted of, criminal contempt, and

15   even clarifies it as -- that it was a misdemeanor.

16             And so -- I think, Your Honor, especially in light

17   of the circumstances here, which I think bear emphasis of

18   what his conviction was for, he was convicted of a federal

19   crime under Title 18 of the U.S. Code based on what the

20   district court found to be a flagrant disregard of a court

21   order that was put in place to prevent him from implementing

22   policies that violated the constitutional rights of people

23   within Maricopa County, Arizona.  The Court issued a lengthy

24   opinion with the factual findings beyond a reasonable doubt,

25   including that he announced to the world that he was going

1    to continue business as usual no matter who said what

2    otherwise.

3          So at the very least, in these circumstances,

4    where you have that type of crime, where you have a report

5    that clarified what the conviction was for and the fact that

6    even the legal classification was a misdemeanor, the gist or

7    the sting is not different; it is substantially -- at the

8    least substantially true as a matter of --

9          THE COURT:  That he violated the court order --

10          MR. FUZESI:  That he violated the court order --

11          THE COURT:  -- and that he was found guilty of

12    violating it.

13          MR. FUZESI:  That's right; that he committed a

14    federal crime.

15          I should point out a couple other things.

16          CNN also did point out four times in the broadcast

17    that he had been pardoned by President Trump, so the viewers

18    clearly understood that.  It was noted twice in Chris

19    Cuomo's introduction.  It was noted once in the underlying

20    report.  It was noted once again in the correction.

21          As we have pointed out -- even if none of that

22    context was there, even if all CNN had said was misdemeanor

23    felony, there is a long line of cases that holds that

24    differences of legal nomenclature like that -- even if

25    that's all we were looking at, that differences of legal

1   nomenclature like that are of essentially no significance

2   when it comes to substantial truth or substantial falsity.

3          I know it's in our papers; but we quote the *Nanji*

4   decision, for example, which sums up the case law saying a

5   long line of cases holds that technical errors in legal

6   nomenclature in reports on matters involving violation of

7   the law are of no legal consequence.  That's precisely the

8   point -- the principle here, even putting aside all of that

9   context.

10          Your Honor brought up the dispute among the

11   circuits as to how one should properly classify as a

12   technical legal matter the offense as a felony or a

13   misdemeanor; we note that in our papers.  I think what that

14   underscores, the import of that here --

15          THE COURT:  The Eleventh Circuit is an outlier.

16          MR. FUZESI:  So there seems to be three

17   approaches --

18          THE COURT:  I didn't say that out loud.

19          (Laughter.)

20          MR. FUZESI:  So there seems to be three approaches

21   which -- maybe it is of an academic interest, if nothing

22   else -- between the Ninth Circuit which says -- basically

23   analogize to the otherwise applicable offense; so if that's

24   obstruction of justice, that would be a felony.  The

25   Eleventh Circuit, which kind of throws up its hands and says

1    it's just sui generis.  And the First Circuit which says, as

2    a textual matter, it's always a felony.  And Judge Walton,

3    actually sitting by designation in Pennsylvania, agreed with

4    the First Circuit approach as a textual matter.

5          But, you know, our point there really is that it

6    underscores that there is even a deep divide among the sort

7    of legal jurists of this country as a tactical matter how --

8          THE COURT:  I will tell Judge Walton you said

9    that.

10         MR. FUZESI:  Right -- as a tactical matter whether

11   it should be classified as a felony or a misdemeanor.

12         So even putting it, I mean -- and that is getting

13   into the sort of technical statutory interpretation.  So,

14   surely, when you get to the point of substantial truth,

15   substantial falsity, when you're dealing with an overall

16   gist or sting, we are at the -- in safe territory, to say

17   the least.

18         So in light of all of these factors, Your Honor,

19   what CNN reported and the case law that we have discussed,

20   we believe the complaint should be dismissed for lack of

21   substantial falsity.

22         Secondly, Your Honor, and, really, independent of

23   the question of substantial truth, substantial falsity is a

24   question of actual malice.

25         THE COURT:  And this one is more troublesome to me

1     because I don't know -- I have a lot of problems with

2     figuring out how a plaintiff ever makes factual allegations

3     about actual malice.

4            I understand how I would deal with it on summary

5     judgment.  And I understand, from the publisher's point of

6     view or the outlet's point of view how you don't want

7     discovery.  But how does a plaintiff ever get in the head of

8     someone to show intent?

9            How does a plaintiff make factual allegations

10    about actual malice that can withstand a motion to dismiss?

11    I don't know how the Court can fashion a way that plaintiff

12    can ever win a case like this with a public official.

13            MR. FUZESI:  Your Honor, I would say that it is --

14    it is a daunting challenge; and I think that that is by

15    design, by design along two avenues.

16            First, the actual malice test is a stringent,

17    daunting, demanding test and, that is, by constitutional

18    design, it is intended to be very difficult for plaintiff to

19    meet in order to give the constitutional breathing space to

20    reporters to report on issues of public concern involving

21    public officials, public figures.  So I think it's -- in

22    some way, it's no surprise that a plaintiff would have a

23    hard time radically pleading actual malice --

24            THE COURT:  Right.

25            MR. FUZESI:  -- because that's the point, it's

1    supposed to be a really difficult test.

2          Secondly, of course, is the *Iqbal* layer.   *Iqbal*

3    clearly demands well-pleaded factual allegations.   And

4    courts around the country, including in this circuit, have

5    applied *Iqbal* in the actual malice context and dismissed

6    complaints for lack of pleading where they essentially just

7    allege, in conclusory terms, knowledge of a defendant.

8          You know, we cite several cases in this circuit,

9    in D.C., including the *Hourani* case by Judge Collyer, which

10   was upheld specifically by the D.C. Circuit on the basis of

11   a lack of sufficient pleading of actual malice; the

12   *Fairbanks* case by Judge McFadden where he says none of these

13   arguments -- where there is just kind of a conclusory

14   allegation of knowledge comes close --

15         THE COURT:  Both of those have that holding, I

16   agree.

17         MR. FUZESI:  Right.  The *Parisi* decision by Judge

18   Leon talking about conclusory allegations of knowledge; and

19   we cite more at pages 16 and 18 of our papers.

20         I think it's worth actually thinking about -- I

21   mean, perhaps that's enough, but I would say that it is

22   worth going back to *Iqbal* itself; I think this is

23   instructive.  I mean, we all kind of apply that sort of

24   standard of *Iqbal* that threadbare recitals of the elements

25   of the cause of action do not suffice -- *Iqbal* says.

1            Labels and conclusions as a formula recitation of

2     the elements of the cause of action will not do; I mean,

3     that is the holding of *Iqbal*.  That is sort of Black Letter

4     Law now why, in your allegation of knowledge, it doesn't

5     suffice.

6            But I think it's also instructive to look at what

7     was actually going on in *Iqbal*.  As Your Honor probably

8     remembers, in *Iqbal*, that dealt with Attorney General

9     Ashcroft and FBI Director Mueller and whether they can be

10    sued for the alleged mistreatment of detainees in the wake

11    of 9/11.

12            Here is what they alleged in their complaint.

13    They alleged that Ashcroft and Mueller, quote:  Knew of,

14    condoned, and willfully, and maliciously agreed to subject

15    the detainee to conditions of harsh confinement.  The

16    plaintiffs allege that Ashcroft was the principal architect

17    of the policy and that Mueller was instrumental in

18    implementing it.

19            The Court held that those allegations are

20    conclusory and not entitled to be assumed as true.  So

21    that's the exact same type of allegations that are at issue

22    in an actual malice case.  So I think it's clear that, after

23    *Iqbal*, just pleading knowledge unto itself as an element

24    doesn't suffice.

25            So that's why I think what Sheriff Arpaio really

1   relies on ultimately is pleading what he characterizes as

2   motive on the part of the defendants.  And what that refers

3   to, ultimately, is an unsupported assertion, kind of buried

4   in the tortious interference count of his complaint, that

5   all of the defendants here had, quote, malice and leftist

6   enmity of Arpaio, and that's it.

7          So a couple of points on that.  As an initial

8   matter, I think it's really utterly implausible to suggest

9   that CNN concocted some sort of leftist plot against

10  Sheriff Arpaio by having Chris Cuomo briefly reference his

11  conviction as a felony instead of a misdemeanor, that

12  immediately clarified on the report that it was a

13  misdemeanor, then have Mr. Cuomo go back on the air and

14  correct his earlier misstatement.  It makes no sense.  In a

15  word, it's implausible under *Iqbal*.

16         But even putting all of that aside, it's clear as

17  a matter of law that allegations of motive like that do not

18  and cannot ever establish actual malice; that's exactly what

19  the Supreme Court held in the *Harte-Hanks* decision where

20  they said:  A newspaper's motive in publishing a story

21  cannot provide a basis for finding actual malice.  The

22  actual malice standard is not satisfied merely through a

23  showing of ill will or malice in the ordinary sense of the

24  term; that is, as opposed to actual malice.

25         Courts in this district have repeatedly reiterated

1   that, dismissing cases on that basis --

2          THE COURT:  Well, that's sort of what I did in

3   *Lohrenz*, isn't it?  And then I got affirmed by the circuit

4   in *Lohrenz,* right?

5          MR. FUZESI:  Say that again.

6          THE COURT:  In *Lohrenz v Donnelly* isn't that

7   what --

8          MR. FUZESI:  Right.  I think that's right.

9          THE COURT:  I said you can't use some military --

10  antimiltary publication.  I think that's the kind of case I

11  was looking at there; it was -- they didn't want women in

12  the military doing things.

13         MR. FUZESI:  Okay.  Yes.  I think that's exactly

14  right.

15         Judge Bates kind of summed it up in the *Parsi*

16  case, and we quote this in our papers where he says:  Case

17  law resoundingly rejects the proposition that a motive to

18  disparage someone is evidence of actual malice.  And, again,

19  many courts in this circuit have come to the exact same

20  conclusion.

21         So in sum, Your Honor, I think there are two clear

22  bases for dismissing the complaint.  There is a substantial

23  truth, and there is the failure to adequately plead actual

24  malice, both independent -- dependently demand dismissal of

25  the complaint.  And we respectfully request the Court

1    dismiss with prejudice Sheriff Arpaio's complaint.

2              THE COURT:  Is there a case where you have seen

3    where the Court denied a motion to dismiss and found there

4    were sufficient allegations of actual malice?

5              MR. FUZESI:  I am sure there have been, Your

6    Honor.

7              MS. SCHARY:  I have litigated cases to trial on

8    defamation, so yes.

9              THE COURT:  So they must have because it went to

10   trial.

11             MS. SCHARY:  Yes.  For sure.  I mean, I have filed

12   summary judgment in defamation cases.  I have litigated

13   through a jury trial in defamation cases involving a public

14   figure, so it's not unheard of.  And it is possible to make

15   those allegations and stand up to the *Iqbal-Twombly*

16   standard, but it's deliberately high.

17             MR. FUZESI:  Right.  That's right.  We litigated a

18   case for years that went to trial where actual malice was

19   the standard.

20             THE COURT:  What was that, *Tavoulareas*, or

21   whatever that case --

22             MR. FUZESI:  That's one from a while ago.

23             THE COURT:  That's probably pre-*Iqbal,* though.  I

24   remember that one.

25             MR. FUZESI:  That's pre-*Iqbal*.

1          THE COURT:  I can remember that one because that

2     was tried here.

3          MR. FUZESI:  So I think the point is that if the

4     plaintiff has allegations -- has good faith factual

5     allegations they can make it.

6          THE COURT:  Right.

7          MR. FUZESI:  I also think though, here, trying to

8     fit actual malice into what actually happened on the air

9     here, particularly here is like --

10          THE COURT:  Well, on CNN, it's corrected

11     immediately.

12          MR. FUZESI:  On CNN -- yes.  Exactly.  It's a

13     square peg in a round whole problem.  No matter what you can

14     say, I don't think you can possibly square an actual malice

15     allegation with what actually happened on the air here,

16     where you have that immediate correction.

17          Your Honor, as you know, we also did make an

18     Anti-SLAPP motion; I'm happy to address that if you'd like,

19     or not.

20          THE COURT:  I don't -- I mean, I think it's clear,

21     either I follow what the D.C. Circuit has said, which makes

22     me more comfortable, and let them decide what they're going

23     to do at the D.C. Court of Appeals or -- and the bar keeps

24     saying I'll tell the D.C. Circuit what they should do with

25     the D.C. Court of Appeals; for a mere district judge, I'm

1    normally of the view that they can decide what the D.C.

2    Court of Appeals' decision means, but...

3              MR. FUZESI:  I am happy to --

4              THE COURT:  I know our chief judge has decided

5    she'll tell them what to do, so...

6              MR. FUZESI:  I'm happy to talk with Your Honor.  I

7    can argue that, or --

8              THE COURT:  I've said enough on some other things.

9    I am not sure I want to educate them.  I get the issue

10   though.

11             MR. FUZESI:  I've got it, Your Honor.

12             THE COURT:  Thanks very much.

13             MR. FUZESI:  Thank you, Your Honor.

14             MR. KLAYMAN:  Your Honor, may I ask whether you

15   would like to take --

16             THE COURT:  Yes.  I will take all of the motions

17   first.

18             MR. KLAYMAN:  -- all three of them.

19             THE COURT:  Who wants to go next?  Okay.

20             MS. SCHARY:  Good morning, Your Honor.

21   Alison Schary for the Rolling Stone defendants.  As we said

22   in our --

23             THE COURT:  And you're just me too because you

24   didn't say --

25             MS. SCHARY:  We're mostly me too.  And as we

 1    said --

 2                 THE COURT:  You didn't say he's in prison.  So

 3    you're just misdemeanor/felony?

 4                 MS. SCHARY:  We are also misdemeanor/felony but --

 5    so if you want me to kind of talk about the specific Rolling

 6    Stone article, I'm happy to do so.

 7                 THE COURT:  Yes.  Did you say anything other than

 8    that misdemeanor/felony?

 9                 MS. SCHARY:  No.  I will let you know, Your Honor,

10    it was an article about the results of the Arizona general

11    election after it was decided several days later.  And the

12    very last line of the article said that Martha MsSally, who

13    was the Republican, eventually the GOP nominee in the

14    general, had beaten the two primary contenders, one of whom

15    was ex-felon and former Maricopa Sheriff Joe Arpaio.  It was

16    corrected that day to "presidential pardonee" with a

17    parenthetical at the end saying that Mr. Arpaio had been

18    convicted of criminal contempt, which is a misdemeanor; and

19    also added an editor's note noting that the correction was

20    made, and apologizing for the error.

21                 Mr. Arpaio pleaded in his complaint that the

22    correction was made promptly.  And I think, given the

23    circumstances, again, for the reasons that my colleagues

24    defending CNN stated, we think the ex-felon description,

25    particularly here, I think was really going to the fact that

1    he was no longer facing a charge.  It was technically

2    incorrect, but --

3            THE COURT:  So what was the first -- the first

4    publication said what?

5            MS. SCHARY:  The first publication said that

6    ex-felon -- that Martha McSally had earned roughly double

7    the number of votes as her closest rival, tea party

8    conspiracist Kelli Ward and triple the number of votes of

9    ex-felon and former Maricopa County Sheriff Joe Arpaio.

10           THE COURT:  Okay.

11           MS. SCHARY:  And then the corrected one, Your

12   Honor, said -- you know, double the number of votes as

13   Kelli Ward and triple the number of votes of presidential

14   pardonee and former Maricopa County Sheriff Joe Arpaio;

15   parentheses, Arpaio was convicted of contempt of court, a

16   misdemeanor, in 2017, and pardoned by Trump less than one

17   month later.

18           Then there is an editor's note that says, Editor's

19   Note:  This post has been updated to reflect the fact that

20   Joe Arpaio's criminal conviction for contempt of court was a

21   misdemeanor, not a felony.  He received a presidential

22   pardon in 2017.  We regret the error.  And that was

23   prompted -- that was published that day.

24           THE COURT:  Okay.  But the first one didn't say

25   that he had been pardoned?

1          MS. SCHARY:  It did not say he had been pardoned.

2     It just said ex-felon.  I mean -- yes.

3          THE COURT:  So that's different.  Is that in kind,

4     substantially true?  The first one wasn't substantially true

5     then.

6          MS. SCHARY:  I mean, we would argue that the first

7     one -- what we're talking about here is really a fleeting

8     reference in the course of one sentence.

9          The article is not about him.  It was just, you

10    know --

11         THE COURT:  An ex-felon who has been pardoned.

12    You call him an ex-felon and you don't say he had been

13    pardoned; that's not substantially true, is it?

14         MS. SCHARY:  Well, I think the "ex," first of all,

15    is indicating the fact that he is no longer facing felony

16    charges, he is not in prison, it is something in the past.

17         I would also note, Your Honor, that just in the

18    context Mr. Arpaio's pardon was a major national story.

19    We're not talking about someone who is unknown to the public

20    here.  He is a public figure.

21         THE COURT:  Well, that wouldn't cut anything on

22    whether it is substantially true.  What you said was not

23    substantially true, ex-felon, without saying he had been

24    pardoned.

25         MS. SCHARY:  Well, we would argue that the

1    difference between felony and misdemeanor, particularly in

2    this case, for the reasons that my colleague had

3    articulated, is substantially true regardless of the --

4    first of all, the pardon does not erase the original

5    conviction.  And I know Mr. Arpaio is --

6              THE COURT:  So you could just call him a felon and

7    leave it at that and not say he had been pardoned; you think

8    that would be substantially true?

9              MS. SCHARY:  I think -- yes.  And I think it would

10   have been substantially true particularly --

11             THE COURT:  Well, you can tell that to a jury.

12             MS. SCHARY:  Okay.  Your Honor, I think that in

13   this case, considering the underlying crime, that it was

14   substantially true.  And -- but, also, I would add that,

15   from an actual malice standpoint, I think the fact that

16   Rolling Stone promptly corrected the error has been widely

17   accepted among courts in this district and across the

18   country as an evidence that negates an inference of actual

19   malice.

20             THE COURT:  When was it corrected?  When was it

21   corrected?

22             MS. SCHARY:  That day.  Several hours later.

23             THE COURT:  And was it -- it was on a website?

24             MS. SCHARY:  Yes.  It was an online article.

25             THE COURT:  The original article was then no

1    longer accessible, or was it?

2           MS. SCHARY:  The original article was changed.  So

3    at the time Mr. Arpaio had filed his complaint, it had

4    already been updated, had the editor's note added.  We put

5    the article in our papers.

6           THE COURT:  Right.

7           MS. SCHARY:  So the original one doesn't exist

8    anymore unless you went back to the first iteration on the

9    Internet Wayback Machine.

10          THE COURT:  Right.

11          MS. SCHARY:  But after -- as of that date, you can

12   see it's been corrected.

13          MR. KLAYMAN:  Your Honor, I apologize for the

14   interruption.

15          But she made a statement, I want to correct it

16   right now, that in our complaint we said it was corrected

17   quickly.  There is no proof they corrected it quickly -- in

18   the complaint or in their pleadings, no affidavits, nothing.

19          THE COURT:  Okay.

20          MS. SCHARY:  Your Honor, just to speak to that, we

21   did put in, as Exhibit B, to our opposition motion -- we did

22   put in a copy of the article from the Wayback Machine from

23   that day showing that it had been corrected as of that day.

24   Mr. Arpaio didn't respond to that at all in his reply.

25          THE COURT:  Well, that's for summary judgment;

1    that's not for a motion to dismiss.

2              MS. SCHARY:  Sure.

3              Regardless, it was certainly corrected quickly;

4    and that is not in dispute here.

5              THE COURT:  Right.

6              MS. SCHARY:  You know, to speak to the question of

7    actual malice, I know Your Honor was speaking earlier about:

8    How can I ever have a case?

9              I think it's important to understand that there is

10   a wide range of defamation claims, and this one we're

11   talking about a single word and a fleeting error that was

12   promptly corrected.  And it may be the case that in those

13   set of facts it may be very difficult to plead facts showing

14   actual malice; and that is because the law protects fleeting

15   errors by journalists.

16             Your Honor said in the *Lohrenz* case in fact:  Mere

17   factual error does not rise to the level of actual malice.

18   Just now, Justice Kavanaugh, in the *Von Kahl* case:  Falsity

19   does not equate to actual malice; and I think that's

20   important here.

21             THE COURT:  Well, that was on summary judgment,

22   though.

23             MS. SCHARY:  That was on summary judgment, yes.

24   But I think the principle there would have equated on the

25   pleadings as well.  I know that was certified over -- that

1    issue was certified over.

2            But I think that when you are trying to take --

3    when you are trying to manufacture actual malice out of the

4    fact of well, you know, this was factually incorrect, you

5    should have known it was factually incorrect and, therefore,

6    you acted with actual malice; that's really collapsing the

7    falsity and the fault requirements.  And there is an

8    independent fault requirement for a reason, and that is to

9    protect these kinds of -- these kinds of errors and

10   particularly, here, when the publication has promptly

11   corrected it once they learned of it, then I think it's

12   very -- it would be intentionally very difficult to plead

13   actual malice.

14           I would note here that not only is there kind of a

15   pleading of, well, they generally have leftist enmity toward

16   me and it was false which, as my colleague noted, that is

17   not sufficient under well-established law.  But there was no

18   specific pleading as to any of the individual defendants.

19   And it's also well-established you can't have actual malice

20   in the ether; it has to be specific to the particular

21   individual defendants, and specific to that statement.  It

22   can't be something else in the story.  I just -- none of

23   that is here.

24           And *Iqbal-Twombly* is very clear.  And the

25   precedents of this court and other courts are very clear

1   that to unlock the doors of discovery you have to have more

2   than just a mere fleeting error.

3        So unless Your Honor has additional questions --

4        THE COURT:  Thank you.

5        MR. KLAYMAN:  Thank you.

6        MR. JASSY:  Good morning, Your Honor.

7        THE COURT:  Good morning.

8        MR. JASSY:  I will be addressing the Huffington

9   Post defendant's motion to dismiss.  The facts are a little

10  bit different for the Huffington Post.

11       I don't want to reiterate all of the arguments

12  that have been already made by my very able codefendants'

13  counsel --

14       THE COURT:  Mr. Baine has trained his guy well so

15  I know you're off to a good start.

16       MR. JASSY:  He certainly -- yes, Your Honor.

17       We'll also be focusing on the substantial truth

18  and the lack of pleading adequately on the actual malice

19  question.  Let's talk, first, I think, about the article

20  itself.

21       The article -- the Huffington Post article related

22  to Kyrsten Sinema, the now senator of Arizona; it was a long

23  piece published on the eve of the election, talking about

24  her policies, her past record, et cetera.  There is a

25  paragraph that references the plaintiff.  And in that

1    paragraph -- in the original publication in referencing the

2    plaintiff, it says that he was convicted for criminal

3    contempt of court and had been sent to prison.

4         The context in which that came up was, again,

5    about Kyrsten Sinema; and it was whether or not she was one

6    of many that approved of the idea of pardoning the

7    plaintiff; and she was not.  She did not vocally approve of

8    that and there is also -- whether or not she was using the

9    plaintiff's name in campaign publications.

10        Again, it was part of a larger piece.  The

11   original publication did have an error about whether or not

12   he had been sent to prison.  I don't have any reason to

13   think that he was sent to prison; it doesn't sound like he

14   was.

15        It's quite clear, as co-counsel pointed out, that

16   he wasn't convicted of a felony; a federal judge found him

17   guilty of that beyond a reasonable doubt.

18        The question here is whether or not saying that he

19   had been sent to prison amounts -- is substantially true or

20   could give rise to a claim -- a plausible claim for actual

21   malice and, under the circumstances, it can't, Your Honor.

22        I think it's important to note that not only was

23   he found guilty of criminal contempt of court by knowingly,

24   flagrantly, willfully violating a federal court order, but

25   by accepting a presidential pardon he, essentially,

1   confessed to the crime; that's what the United States

2   Supreme Court said in the *Burdick versus United States* case

3   over a century ago, and was cited by Judge Bolton in her

4   decision finding the plaintiff guilty of criminal contempt

5   of court.

6            Our motion papers set forth cases from around the

7   country dating back over a century stating that erroneously

8   stating -- particularly in passing, as this particular

9   article did -- that someone went to prison for a crime that

10  they committed cannot support a finding of falsity as a

11  matter of law.

12           It's important also to note that the original

13  article here was corrected.  It was corrected within two

14  days.  And plaintiff in the complaint, in paragraph 26, says

15  that there was no effort to correct the article.  However,

16  in the exhibits attached to the complaint, at page 3 of 1-1,

17  it specifically shows the correction.  And it's even

18  circled, and it says "updated report."  This is the

19  complaint.  I mean, we've got it in our request for judicial

20  notice as well.  But the complaint itself says "correction"

21  in that particular paragraph.

22           The complaint doesn't have the full article for

23  some reason, but the request for judicial notice does.  And

24  the correction is right there, and it's right below the

25  exact paragraph, in the middle of the article, so there is

1    no needing to hunt for it.  It says, Correction, a previous

2    version of this story mistakenly indicated Joe Arpaio went

3    to prison for his conviction.  So this was promptly

4    corrected.

5          And so the allegation in the complaint that it was

6    not is just wrong, and it's contradicted by the --

7          THE COURT:  Is the Huffington Post just an online

8    newspaper?

9          MR. JASSY:  Correct.  Yes.  Getting back to the

10   substantial truth argument though, Your Honor, there is a

11   long line of cases from all over the country that supports

12   this proposition; and I went back and I reread the cases

13   again yesterday.

14         I think that perhaps the one that's closest is the

15   oldest one that comes from California Court of Appeals, and

16   the facts of that case are interesting.  With the Court's

17   indulgence, I would like to run through them.  I am happy to

18   talk about any of those cases that we cited; but this one, I

19   think, stands out, even though it is from 1910.

20         In that case a newspaper stated that the

21   plaintiff, Mr. Skrocki had expressed disapproval of the

22   assassination of President McKinley and was arrested and,

23   quote, held at the city jail.  This was an error because

24   there was no evidence that plaintiff had ever been arrested

25   or held at the city jail.  But the court held that the error

1   did not diminish a substantial truth argument.  And even

2   then they're using the same language about gist and sting,

3   substantial truth, et cetera.

4       The sting of the article the court said was that

5   plaintiff said that President McKinley, "ought to have been

6   killed."  And this, the Court held, implied that the

7   plaintiff was "opposed to the reign of law and order."  And

8   the defendants, therefore, the Court held, were just --

9   were, in effect, calling the plaintiff an anarchist -- not a

10  word we use every day now, but was a common refrain back in

11  that era.

12      The Court held that it was, quote, immaterial and,

13  quote, trivial to erroneously report that the man had been

14  arrested and held in jail even though that was an admitted

15  error in the article.

16      So how does this apply to this case?

17      Well, in this case, the plaintiff here has, we

18  submit, shown himself to be, quote, opposed to the reign of

19  law and order by defying a court order.  That is -- in

20  modern parlance, that would be the equivalent of calling

21  someone an anarchist over a century ago.

22      By accepting the pardon, as he did, he admitted

23  and he confessed to being in criminal contempt of court in

24  addition to the finding by Judge Bolton out of the district

25  court in Arizona.  So just like in the *Skrocki* case, it's

1     immaterial and it's trivial to erroneously report for just

2     two days that he was sent to prison.

3            That is the starting point for the cases that

4     follow beyond that, the *Pearlman* decision out of the trial

5     court in New York Supreme Court; the *Fendler* decision out of

6     the Court of Appeals in Arizona and, then, also, the *Wilson*

7     case out of the Court of Appeals in Illinois which -- I

8     would be happy to run through those, too, Your Honor; but

9     they all come to the same basic conclusion, which is, that

10    erroneously reporting that someone has spent time in jail or

11    is serving time in prison, is incarcerated or has been

12    incarcerated is not false.  It satisfies the doctrine of

13    substantial truth where the person has been found guilty or

14    convicted of a crime -- that's the gist and sting -- that

15    the person is a criminal, that the person has committed a

16    crime; it's not whether or not they have actually served

17    time in jail.  And that's what these cases say over and over

18    again, and that's what we submit supports a finding of

19    substantial truth in this case.

20           Those cases went completely unrebutted by

21    plaintiff in the opposition.  No response to them.  There is

22    just boilerplate allegations about how falsity is an element

23    of defamation.  Yes, it is an element of defamation.  But

24    the substantial truth in the cases that we cite are on

25    point, they are a consistent line, and they should support a

1    finding of substantial truth in this case.

2            Now, the inadequate pleading of actual malice, as

3    co-counsel pointed out, is reinforcing the *Fairbanks* case,

4    *Deripaska, Hourani, Parisi,* et cetera -- all from this

5    district court; and we'd just add to that by saying that the

6    plaintiff cannot, consistent with Rule 11, allege actual

7    malice particularly where, as there was here, a prompt

8    correction.  And that's what the *Logan* case says out of this

9    district court, that's what the *Hoffman* case says; that a

10   correction, a prompt correction, negates the inference of

11   any actual malice.

12           Now, if Your Honor would like, I am also prepared

13   to discuss some of the ancillary claims, the false light,

14   and the tortious interference.  We have several arguments

15   why those claims in addition should fail and, particularly,

16   fail here as applied to the Huffington Post defendants

17   because, when examined carefully, they are not even really

18   alleged against the Huffington Post defendants.

19           I don't know if Your Honor wants me to get into

20   that.  I don't have much to add beyond --

21           THE COURT:  I don't think it's necessary because

22   we can deal with them if we get past these first two

23   hurdles.

24           MR. JASSY:  Understood, Your Honor.

25           So with that --

```
 1                    THE COURT:  Thank you very much, Mr. Jassy.

 2                    MR. JASSY:  Thank you, Your Honor.

 3                    THE COURT:  All right.  Mr. Klayman.

 4                    MR. KLAYMAN:  Thank you, Your Honor.

 5                    THE COURT:  I haven't had you here in a long time.

 6       It's a pleasure to have you again.  I know some judges don't

 7       say that to you, but I will say it.

 8                    MR. KLAYMAN:  Mutual, Your Honor.

 9                    At the outset, Your Honor, I want to point out an

10       inaccuracy by CNN's counsel; perhaps they inadvertently made

11       a mistake.  But, in paragraph 22, we allege:  As of today,

12       the CNN broadcast is still available through defendant's

13       CNN's website, and no efforts have been taken by defendant

14       CNN, defendant Cuomo, or defendant Zucker to correct this

15       false statement.  So, yes, it is in the complaint that this

16       is still up on the website.

17                    THE COURT:  The original?

18                    MR. KLAYMAN:  The original.

19                    THE COURT:  The original four-minute segment --

20                    MR. KLAYMAN:  Which does not have the correction

21       by Chris Cuomo at the end.

22                    THE COURT:  Okay.

23                    MR. KLAYMAN:  Now, let me get into this particular

24       issue, and I will move on generally.

25                    Once something goes up on the Internet, it
```

1   proliferates.

2           THE COURT:  Right.  Even if they took it down,

3   it's still other places.

4           MR. KLAYMAN:  It's like a virus.  People pick up

5   on it, people who don't like Sheriff Arpaio --

6           THE COURT:  Right.

7           MR. KLAYMAN:  -- who is a very distinguished -- I

8   might say he's sitting there right there with me today; long

9   career, five times elected sheriff, former official -- high

10  official of the Drug Enforcement Administration.

11          He has become a whipping boy to get to the

12  president.  This is the way they can get to him, so they

13  beat up on Sheriff Arpaio and, therefore, the pardon is

14  invalid and, therefore, Trump's covering up and -- you know

15  the story, I don't need to get into it.  But I wanted to

16  correct that error.

17          Now, I'm going to get into the issue of actual

18  malice and constitutional malice.  But with regard to

19  constitutional malice, motive, intent, a reckless disregard

20  at a minimum, just last Sunday -- I am going to submit this,

21  Your Honor, to supplement -- there was a report by CNN,

22  national programming, stating that this president -- Trump's

23  Joe Arpaio whose anti-immigrant tactics were so racist he

24  was frequently accused of racism -- I mean, they are still

25  continuing this.  They haven't learned their lesson.  You

1    have got to beat up on Sheriff Arpaio; they have got to

2    destroy him to get to the president and his immigration

3    policies.

4            Now, let me get into the substance here because

5    this does bear on malice and it's why we need discovery in

6    this case at a minimum, even with CNN.

7            Is that -- there is a difference between being a

8    felon and a misdemeanor.  This man has never had anything

9    other than traffic tickets in his whole life.  A misdemeanor

10   can be a traffic ticket, it can be simply not paying your

11   toll across a toll bridge.  And they know the difference.

12           In the case of Chris Cuomo, this is a highly

13   intelligent person, Yale-educated, Fordham Law School,

14   someone who is a lawyer.  He knew the difference between

15   being a felon and being simply found liable for a

16   misdemeanor; yet, he led off the program with that.  This is

17   also why you need discovery here, because a lot of viewers

18   don't go past the initial part of a segment or they don't

19   pay attention.

20           It was, bang, a felon, right off the bat; not

21   corrected by Cuomo, and what's still up on the Internet.

22   And that creates a -- not just a defamation, but a false

23   light.

24           We have pled false light.  A false light is to

25   hold someone out for ridicule; it can even be true.  Yet

1    false light is actionable in this district; it's also called

2    defamation by implication in some other courts, such as in

3    Florida where I practice.  So this needs to be kept in mind.

4           And this matter was kept out there.  Initially, it

5    was published on January 10, 2018, and it was still up on

6    December 10, 2018 when we filed the complaint.  It was only

7    the filing of the complaint that got them to allegedly

8    correct.

9           And they said only four minutes -- no; it was

10   longer than four minutes.  There was a difference between --

11   before the report came out where some reporter said very

12   innocuously, just in passing, that it was a misdemeanor.  It

13   was three minutes, four seconds before that correction was

14   made, plus what had previously occurred with Chris Cuomo.

15          What is important here, Your Honor, is that there

16   is no hard proof that any of this happened; this is argument

17   of counsel right now.  We don't have any sworn affidavits in

18   the record.  They want you to take judicial notice of what

19   they want the case to be.

20          Now, with regard to the Huffington Post, Arpaio is

21   sent to prison for contempt of court.  Obviously, that's an

22   implication, at a minimum, false defamation per se.  That's

23   what we're dealing with here, defamation per se with regard

24   to a crime, of committing a felony.  You don't even have to

25   show damages.  Damages are presumed with defamation per se.

1    But we have pled by pleading defamation generally;

2    defamation per se, general defamation; and we have a

3    separate count for false light, but included in that would

4    be defamation by implication.  There are three types of

5    defamation here.

6           Obviously, to be sent to prison, most people will

7    see that as being convicted of a felony.  And, again, no

8    mention was made of a pardon.  No mention was made until

9    this day.  And I am in this case in the Ninth Circuit on

10   behalf of the fine sheriff, that -- he's seeking to have

11   everything vacated as a matter of law.  There will be no

12   judgment left of Judge Bolton.

13          As, Your Honor, I am sure knows, Arizona is a very

14   politicized place, and it's a very rough place; almost like

15   Washington, D.C., perhaps it's a bit rougher here.  But

16   people are very quick to use this against somebody.  And

17   this all came up during the height of either the election --

18   not coincidentally or thereafter, when Sheriff Arpaio said:

19   I am seriously considering running for the U.S. Senate again

20   in 2020.  It's an attempt to destroy him.  And by destroying

21   him, you can attempt to destroy the president.

22          With regard to the Rolling Stone ex-felon, Your

23   Honor is correct, he is not an ex-felon.  He was pardoned.

24   He wasn't a felon to begin with, but he was pardoned; no

25   mention was made.

1          Now, what is also important to note and to show is

2     the malice.  I am going to get to the malice.  But malice is

3     not just an intentional false statement; it's reckless

4     disregard.  These press entities are highly sophisticated.

5     They know what the story is, particularly with regard to

6     someone like Sheriff Arpaio.  He is the subject of great

7     interest, reporting, and focus.  They knew he was not a

8     felon, but they did it anyway.

9          This is why, also, you need discovery; because

10     these corrections, so-called corrections, whenever they were

11     made -- some of them were never made -- were likely the

12     result of people calling in who support President Trump and

13     support President -- Arpaio, saying:  You can't say that

14     about him.

15          This is something probably they were provoked to

16     do because we know the course of conduct of these

17     publications.  And as you know me, I always say it straight

18     up.  I have always said it straight up to you.  I say it up

19     to judges who have been appointed by other presidents.

20     There is a tremendous leftist hatred of Sheriff Arpaio and

21     the President, manifested at CNN, Rolling Stone, and the

22     Huffington Post.  They don't like me much either, I might

23     add.  This is the world we live in today; it's the real

24     world.

25          And that's why, if we are allowed to get into

1    discovery, Your Honor, there is lots of stuff that's going

2    to crawl out from under that rock, to coin a phrase.  You

3    can imagine what is sitting under the rock at CNN,

4    Huffington Post, and Rolling Stone about destroying this

5    fine man here who has had a distinguished career.

6         With regard to substantially true, you know, I had

7    my own case going back to 2014 against my former group

8    Judicial Watch in Florida before Judge Altonaga at one point

9    was mentioned as a Supreme Court possible nominee during the

10   time of George W. Bush.  They published that I was convicted

11   of a crime.  They tried this argument, substantially true.

12   Judge Altonaga let it proceed to discovery, and I got a jury

13   verdict which included punitive damages.

14        In that case were statements by the person who

15   uttered that which were not corrected by Judicial Watch that

16   I was an expletive deleted.  That judge found that relevant

17   but also reckless disregard because they didn't correct it;

18   and they knew it was false.  So I have personal experience,

19   and that's why I stand up for Sheriff Arpaio and others who

20   have been pushed around in the media, destroyed, reduced to

21   ash.  This has affected not just his reputation, not just

22   his prospects politically, but his business.  He has a

23   private business.  It's hurt him, his wife, everybody.  He

24   has to take this pounding every single day including last

25   Sunday from CNN.  I have never heard the man say a racist

1    thing in all the time I have known him; and that's why he is

2    also my friend.

3          Now, one of the defendants -- frankly, I forgot

4    which one, I think it was the last one, I may be wrong --

5    this tells you where they're coming from; this tells you

6    everything.  My client, Sheriff Arpaio, is defamation-proof

7    because you get destroyed and beaten up on and you are used

8    as a whipping boy to get to the president.  It doesn't

9    matter what we say.  We can say whatever we want; if we get

10   caught, we'll correct it.  We'll come in front of the Court

11   and pretend like we're Girl Scouts or Boy Scouts.  But

12   that's not the way it works in the real world.  You have

13   already destroyed somebody and you've reinforced it.

14         Again, to make that argument, the great Justice

15   Antonin Scalia, when he sat on the D.C. Circuit, said that's

16   fundamentally a bad idea, this whole idea of defamation

17   proof; and there is no way for a court to mete out that

18   determination.  So he threw it out, majority opinion on

19   that.  I don't even know why they're making the argument;

20   it's as frivolous as their Anti-SLAPP motion to make that.

21   And that was just to beat up on him.  They beat up on me in

22   the pleadings, too, in a footnote; but that's also

23   irrelevant.  But they couldn't resist.  Because if you can

24   get to me, as his lawyer, you can get to Arpaio.  And if you

25   can get to Arpaio, you can get to President Trump; that's

1    the way it works in today's world.

2         Your Honor, I am going to go through specifically

3    why this was so egregious.  I want to hit the points that

4    were hit.  I wanted to give you the general presentation

5    and, obviously, I will welcome your questions if you have

6    further questions.

7         Here is the problem.  The problem is, in essence,

8    once it's out there, it's out there; you can't pull it back.

9         We know about CNN, that they didn't -- they took a

10   long time and never fully made the correction.

11        A felony is a serious offense -- it's the most

12   serious offense.  There is a reason why that word was used.

13   It's not like a misdemeanor.

14        The allegations of the complaint are not

15   conclusory, they get to the point.  Your Honor can review

16   the complaint, I am sure you have read it.  Again, before

17   discovery, what are you supposed to say?  Am I supposed to

18   divine what was in their head without discovery?

19        What we do know is that these are sophisticated

20   entities, whether it's a lawyer like Chris Cuomo, whether

21   it's a CEO like Jeff Zucker -- again, Your Honor will make

22   the decision on the pleadings, but it's been reported that

23   he has an agenda over there at CNN -- he controls the

24   broadcasters -- or whether it's anybody else that has played

25   a role in this, is that there was a reckless disregard for

1    the facts.  Sheriff Arpaio was front and center; he is still

2    front and center.  We are still fighting, this country, over

3    immigration policy and illegal immigration across the

4    border -- in your native state of Texas and Arizona and

5    California and elsewhere -- so they knew the score.  This

6    wasn't unintentional, and it was a reckless disregard.

7           Your Honor, I think that pretty much sums it up.

8    I wanted to address the specifics of what they said but,

9    just generally, I welcome any questions you might have.

10          THE COURT:  How do you square your position on the

11   factual allegations about actual malice with the case law in

12   *Iqbal* that conclusory statements are not enough, that you

13   have got to have factual allegations of what the actual

14   malice is?

15          MR. KLAYMAN:  The factual allegations are that it

16   was a reckless disregard to call him a felon when he wasn't

17   a felon.  It was factually incorrect and reckless to say

18   that he had been put in prison when he wasn't put in prison;

19   the omission of not saying that he was pardoned and, in

20   fact, was challenging the decision by Judge Bolton, initial

21   decision, for which he was pardoned at the Ninth Circuit and

22   at the Supreme Court which is where it is as well -- those

23   material omissions, it was reckless -- because they knew --

24   reckless disregard for the facts.

25          Every case -- I don't need to tell Your Honor, you

1    are much more distinguished than I am in terms of court

2    decisions -- you live it with the D.C. Circuit and

3    elsewhere.  But most of these cases they cited aren't even

4    D.C. cases, number one; number two, every case is decided on

5    its own facts.  And that's the primary distinction here, its

6    own facts.

7            THE COURT:  Did you look at *Lohrenz,* the case of

8    mine that I talked about?

9            MR. KLAYMAN:  I did not look at Morris [sic] --

10           THE COURT:  *Lohrenz*, L-O-H-R-E-N-Z.

11           MR. KLAYMAN:  -- I will be happy to look at it.  I

12   will be happy to submit a supplemental brief if Your Honor

13   would like.

14           THE COURT:  I think you ought to look at *Lohrenz*

15   because I have talked to this same kind of issue about --

16   it's a troublesome case because -- it's a troublesome issue

17   about before you let somebody launch into discovery against

18   a news organization.

19           I don't have the magic answer, but it's a

20   troublesome thing because news organizations have to have

21   some protection to be able to function in a free society.

22   So you can't let somebody come in and just make an

23   allegation because what they said was erroneous, that they

24   had some malice -- just on the mere allegation they acted

25   with malice; there's got to be something more.

1          MR. KLAYMAN:  Your Honor, we did cite cases with

2     regard to both actual malice and constitutional malice.  And

3     you can -- there is an inference there is a presumption that

4     can be raised from the constitutional malice as well as I

5     was saying with the Judicial Watch case, where we went to a

6     jury.  We did discovery before that.  Without discovery, we

7     wouldn't have seen internally what was going on.

8          So what's important here is that we have a full

9     recitation.  I mean, if they win at the end, which I firmly

10    believe they won't, then at least we have been able to get

11    to the bottom of it.  It's no secret here that CNN hates the

12    guts of my client, hates me, and hates the president --

13    hates conservatives in general.  I know that -- I am not

14    saying that to influence you, it's just a fact.  Turn the TV

15    on every day.

16          So, consequently, it is relevant.  It is a factor

17    to consider actual malice.  In this case, on the facts, he

18    clearly is not a felon.  They had reason to know he is not a

19    felon.  They had reason to know he didn't go to prison.

20    They had reason to know what else we allege.  We have said

21    that specifically in the complaint.  But if Your Honor does

22    not feel it is specific enough, I will move to amend it with

23    your leave in that regard.

24          But I do take umbrage at CNN getting up here and

25    saying that it isn't in the complaint in terms of leaving

1    this up on the website all this time.  They should know

2    better than that.

3        So that's where we are right now.  And we just

4    want -- I know Your Honor is a very fair person.  I haven't

5    won every case in front of you in the past, but I know you

6    will make a fair decision.  And facts speak for themselves.

7    Res ipsa loquitur, as they say.  Thank you.

8        THE COURT:  Thank you, Mr. Klayman.

9        Okay.  The defendants get the last word; it's your

10    burden on the motion.

11        MR. FUZESI:  Your Honor, I won't take more than 30

12    seconds.  Really, we rest on our papers and my prior

13    argument.

14        I just want to make sure we're crystal clear on

15    the standard for actual malice.  Counsel repeatedly kept

16    saying that there was reason to know, there is reason to

17    know -- that is not what "reckless disregard" means as a

18    matter of constitutional actual malice, as Your Honor knows.

19    This is -- what "reckless disregard" in that context means

20    is a subjective high-degree of awareness of probable

21    falsity; it's not a standard of gross negligence.  That's

22    what the Supreme Court and every court has held since

23    *New York Times versus Sullivan.*  I just wanted to make sure

24    that is clear.

25        MR. KLAYMAN:  May I have 30 seconds?

1          THE COURT:  Let the other defendants go.

2          MR. KLAYMAN:  These organizations have large

3     research organizations, they have large back-up here.  It's

4     a reckless disregard to publish something like that when

5     it's readily available and you know it's not true; simple as

6     that.

7          MR. FUZESI:  That's not the standard, Your Honor.

8          MS. SCHARY:  Your Honor, I will also be brief.

9          I just wanted to go back to one point on

10    "substantial truth."  Mr. Klayman had said that, you know, a

11    misdemeanor could be a traffic ticket whereas a felony is a

12    serious offense.  He also said that every case is decided on

13    its own facts, and I agree with that.

14         We think, Your Honor, that being convicted of the

15    federal crime of willfully violating a court order in

16    flagrant disregard for constitutional rights is the set of

17    facts where "ex-felon" would be substantially true.  Maybe

18    if it was a traffic ticket, maybe it wouldn't be

19    substantially true, but that's not the facts before us here.

20    And on these facts we think the term "ex-felon" instead of

21    "pardoned federal criminal" is substantially true.

22         Thank you, Your Honor.

23         THE COURT:  All right.

24         MR. JASSY:  Your Honor, there was a reference in

25    counsel's argument to the Huffington Post saying that there

1   was an implication that the plaintiff had committed a

2   felony -- that's just a bridge too far, Your Honor,

3   especially because there is no dispute -- as we pointed out

4   in our papers at page 16, footnote 7 -- that it's not

5   uncommon for people who violate court orders are held in

6   criminal contempt of court to go to prison; the

7   United States Supreme Court said this in *Yates versus U.S.*

8   The Eleventh Circuit affirmed an 18-month prison sentence

9   for a criminal contemnor in 2007; also reinforced by the

10   Seventh Circuit, the Sixth Circuit, the Fourth Circuit,

11   et cetera.  This is not an unusual occurrence, so this new

12   implication claim -- it's just too far.

13          And I'd like to just address the actual malice

14   point quickly, Your Honor, to conclude as well.  The need

15   for protection for erroneous statements is at its zenith

16   when we are talking about political speech, which is what we

17   are dealing with here.  There is no answer from counsel

18   about the *Hoffman* and *Logan* rule that a prompt correction

19   negates actual malice; that's what we have here, Your Honor.

20   So, with that, we'd submit.

21          MR. KLAYMAN:  Your Honor, may I make one point?

22   This will take 10 seconds.

23          THE COURT:  Go ahead.

24          MR. KLAYMAN:  This is not a political speech.

25   This didn't come from another candidate.  It came from CNN,

1    Rolling Stone, and Huffington Post.  That's not political

2    speech.

3              THE COURT:  I thought you said it was.

4              MR. KLAYMAN:  Well, they're trying to destroy him

5    politically.  But, yes, candidates --

6              THE COURT:  I'm just kidding.

7              MR. KLAYMAN:  Okay.  Thank you.

8              THE COURT:  Thank you very much, counsel.  I

9    appreciate it.

10             Court will be in recess.  Thank you, all.

11             (Whereupon, the proceeding concludes, 11:41 a.m.)

12                       *  *  *  *  *

13                       **CERTIFICATE**

14

15             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

16   certify that the foregoing constitutes a true and accurate

17   transcript of my stenographic notes, and is a full, true,

18   and complete transcript of the proceedings to the best of my

19   ability.

20

21

22        Dated this 26th day of July, 2019.

23

       /s/ Elizabeth Saint-Loth, RPR, FCRR
24     Official Court Reporter

25